UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
MATTHEW CONNOLLY,                                      )
                                                       )  Case No.: 1:22-cv-09811-JMF
                               Plaintiff,              )
                                                       )  **ORAL ARGUMENT REQUESTED**
                        vs.                            )
                                                       )
DEUTSCHE BANK AG,                                      )
                                                       )
                               Defendant.              )
------------------------------------------------------------------------x

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS

**SIMPSON THACHER & BARTLETT LLP**

Jonathan K. Youngwood (jyoungwood@stblaw.com)
Patrick K. Barry (patrick.barry@stblaw.com)
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

Karen M. Porter (karen.porter@stblaw.com) (*pro hac vice*)
900 G Street, NW
Washington, D.C. 20001
Telephone: (202) 636-5500
Facsimile: (202) 636-5502

*Attorneys for Defendant Deutsche Bank AG*

# TABLE OF CONTENTS

Page

Introduction ........................................................................................................................... 1

Background ............................................................................................................................ 3

Legal Standard ...................................................................................................................... 7

Argument ............................................................................................................................... 7

I.  The Plaintiff Fails To Adequately Allege That Deutsche Bank Initiated His Prosecution ................................................................................................................ 8

    A.  The Complaint Does Not Plausibly Allege That Deutsche Bank Overtook The U.S. Government's Prosecutorial Volition ...................................................... 9

II.  The Complaint Fails To Adequately Allege That There Was A Lack Of Probable Cause To Believe The Plaintiff Committed A Crime ........................................................ 12

    A.  The Complaint Fails To Adequately Allege A Lack Of Probable Cause ............. 13

    B.  Probable Cause Is Presumed Because The Plaintiff Was Indicted By A Grand Jury And The Plaintiff Fails To Rebut That Presumption ......................... 15

    C.  Probable Cause Is Presumed Because The Plaintiff Was Convicted At Trial And The Plaintiff Fails To Rebut That Presumption .................................... 16

III.  The Complaint Does Not Plausibly Allege That Deutsche Bank Acted With Malice ...................................................................................................................... 18

Conclusion .......................................................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baer v. Sprint Long Distance,*
    60 F. Supp. 2d 209 (S.D.N.Y. 1999)..............................................................passim

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................................3, 7, 16

*Betts v. Shearman,*
    751 F.3d 78 (2d Cir. 2014).................................................................................13

*Cangemi v. United States,*
    13 F.4th 115 (2d Cir. 2021) .................................................................................5

*Colon v. City of New York,*
    60 N.Y.2d 78 (1983) ..........................................................................................15

*Dantas v. Citigroup, Inc.,*
    779 F. App'x 16 (2d Cir. 2019) .......................................................................8, 9

*Demosthene v. City of N.Y.,*
    2019 WL 181305 (E.D.N.Y. Jan. 10, 2019) .......................................................16

*Dettelis v. Sharbaugh,*
    919 F.3d 161 (2d Cir. 2019).......................................................................8, 12, 13

*Elek v. Inc. Vill. of Monroe,*
    815 F. Supp. 2d 801 (S.D.N.Y. 2011)..................................................................18

*Ferlito v. City of Oswego,*
    2006 WL 2238939 (N.D.N.Y. Aug. 4, 2006) ......................................................19

*Floyd v. Rosen,*
    2022 WL 1451405 (S.D.N.Y. May 9, 2022) .........................................................5

*Gaston v. City of New York,*
    851 F. Supp. 2d 780 (S.D.N.Y. 2012)..................................................................13

*Gilman v. Marsh & McLennan Cos.,*
    868 F. Supp. 2d 118 (S.D.N.Y. 2012)...........................................................passim

*Hutchins v. Solomon,*
    2018 U.S. WL 4757970 (S.D.N.Y. Sep. 29, 2018).........................................17, 18

*Kalisch-Jarcho, Inc. v. New York*,
  58 N.Y.2d 377 (1983) ........................................................................... 18

*Kilpatrick v. People*,
  5 Denio 277 (N.Y. Sup. Ct. 1848) ........................................................ 18

*Lazzarini v. City of N.Y.*,
  2020 WL 4016225 (N.Y. Sup. Ct. July 16, 2020) ................................ 13

*Mitchell v. Victoria Home*,
  434 F. Supp. 2d 219 (S.D.N.Y. 2006) .................................................. 16

*Munoz v. New York*,
  18 N.Y.2d 6 (1966) .................................................................... 8, 12, 21

*Nardelli v. Stamberg*,
  44 N.Y.2d 500 (1978) ........................................................................... 18

*Ramchandani v. CitiGroup, Inc.*,
  2021 WL 930627 (S.D.N.Y. Mar. 11, 2021) .................................. 20, 21

*Rothstein v. Carriere*,
  373 F.3d 275 (2d Cir. 2004) .......................................................... 8, 15

*Rutuelo v. State*,
  449 N.Y.S.2d 419 (N.Y. Ct. Cl. 1982) ........................................... 12, 14

*Smith v. Rossini*,
  2020 WL 9816016 (E.D.N.Y. Nov. 30, 2020) ........................................ 5

*United States v. Connolly*,
  24 F.4th 821 (2d Cir. 2022) ............................................................. 6, 7

*United States v. Connolly*,
  2019 WL 2125044 (S.D.N.Y. May 2, 2019) .................................... 5, 14

*Watson v. Grady*,
  2015 WL 2168189 (S.D.N.Y. May 7, 2015) ......................................... 15

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................. 1, 7

Federal Rule of Civil Procedure 9(b) .................................................. 7, 15, 16

**Treatises**

52 Am Jur 2d Malicious Prosecution § 5 ...................................................... 21

Restatement (Second) of Torts, § 667 .................................................. 16, 18

Restatement (Second) of Torts, § 668, cmt. d ............................................................................ 19

Restatement (Second) of Torts, § 668, cmt. g ............................................................................ 20

Defendant Deutsche Bank AG ("Deutsche Bank") hereby submits this memorandum of law in support of its motion to dismiss Plaintiff Matthew Connolly's Complaint (Dkt. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6).  In support, Deutsche Bank states as follows:

## INTRODUCTION

Plaintiff Matthew Connolly is a former Deutsche Bank trader who seeks to blame his former employer, Deutsche Bank, for the fact that he was investigated, indicted, and convicted as part of a multi-year, industry-wide government inquiry into interest-rate manipulation that encompassed numerous financial institutions and resulted in the prosecution of more than twenty individuals.  That the Second Circuit years later concluded that the alleged interest-rate manipulation was not unlawful does not change the fact that the Plaintiff was prosecuted—by the U.S. government, not Deutsche Bank—based on what was understood to be the law at the time.  Indeed, Deutsche Bank agreed to pay a $2.5 billion fine, fired seven employees, including a managing director, four directors, and two vice presidents, and had its London-based subsidiary plead guilty to criminal wire fraud in connection with those same allegations of interest-rate manipulation.  To the extent anyone is to blame for Mr. Connolly's situation, it is not Deutsche Bank.

Ultimately, the Plaintiff's attempt to allege that he was "maliciously prosecuted" by his former employer—which requires that he allege that Deutsche Bank initiated the prosecution, a lack of probable cause for the prosecution, that Deutsche Bank was motivated by actual malice, and that the prosecution terminated in the Plaintiff's favor—is deficient as a matter of law and should be dismissed with prejudice for at least three independent reasons:

*First*, the Complaint must adequately allege that Deutsche Bank "initiated" the prosecution against the Plaintiff.  To allege that a private entity "initiated" the prosecution, the Complaint must allege that Deutsche Bank overtook the prosecutor's volition in bringing the

prosecution.  The Complaint does not and cannot do so.  All that the Complaint alleges is that

Deutsche Bank cooperated with investigators and received leniency for its cooperation.  But as

courts in this district have held time and again, that is not enough.

Second, to bring a claim for malicious prosecution, the Plaintiff must allege that Deutsche

Bank lacked probable cause to bring the prosecution.  But the facts alleged are to the contrary:

The Plaintiff admits that he engaged in conduct that was considered by both the government and

the district court at the time to be criminal.  That an appellate decision later determined that the

underlying conduct was actually lawful does not undermine the reasonableness of concluding the

Plaintiff had committed a crime at the time of the purported malicious prosecution.  Further,

Deutsche Bank is entitled to at least two legal presumptions that it had probable cause to believe

the Plaintiff was committing a crime—the first by virtue of the Plaintiff's indictment by the

grand jury, and the second by the Plaintiff's criminal conviction by the jury—neither of which

the Complaint rebuts as it must to advance this case past the pleading stage.

Third, the Complaint does not allege that Deutsche Bank acted with the malice required

for a malicious prosecution claim.  The Complaint alleges that Deutsche Bank cooperated with

the government's investigation in the hopes that it would be treated more leniently.  But a

potential co-defendant's mere cooperation with law enforcement and prosecutors is not the sort

of intent to harm necessary to allege malice.  If it were, every co-defendant considering

cooperating with prosecutors in hopes of securing more lenient treatment would need to weigh

the risk of civil liability to their co-defendant in deciding whether to come forward and tell the

truth—something the courts have carefully sought to avoid for decades.

For each of these reasons, the Court should dismiss the Complaint with prejudice.

2

# BACKGROUND[1]

This case concerns the U.S. Dollar London Interbank Offered Rate (or "LIBOR"), a benchmark rate of interest meant to reflect the rate at which banks could borrow from one another on a short-term basis.  Compl. ¶ 24.  This interest rate historically served as a reference point for many different types of investments, loans, and trading positions.[2]  *Id.* ¶ 28. Consequently, even a small move in one direction or the other could mean substantial gains or losses for traders.  *Id.*

LIBOR was computed daily from the submissions of sixteen banks made in accordance with a promulgated methodology and set of rules.  *Id.* ¶ 26.  Deutsche Bank was one of the sixteen banks that submitted a daily estimate used to calculate that rate.  *Id.*

In 2008, the *Wall Street Journal* published an article on LIBOR, which discussed concerns that the benchmark rate was "becoming unreliable."  *Id.* ¶ 41.  The concern was that the bank submitters were providing interest rate estimates that did not accurately reflect their true borrowing costs.  *Id.*

A number of government investigations and inquiries ensued.  By 2010, the United States Securities and Exchange Commission ("SEC") and Commodity Futures Trading Commission ("CFTC") had opened investigations into potential LIBOR manipulation.  *Id.* ¶¶ 42–43.  In the years that followed, the Federal Bureau of Investigation ("FBI"), Department of Justice ("DOJ"),

---

[1]     This motion accepts the well-pleaded allegations in the Complaint as true solely for purposes of this motion to dismiss.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

[2]     LIBOR is generally being phased out; as of January 2022, for instance, it was no longer used to secure new loans in the United States, replaced by the Secured Overnight Financing Rate (SOFR).

and others joined the investigations; the British Parliament also conducted hearings on the matter.  *See id.* ¶¶ 50, 67, 95.

The CFTC approached Deutsche Bank, as one of the sixteen LIBOR submitters, and expressed that it expected Deutsche Bank to cooperate with its investigation, including by retaining outside counsel to conduct an internal investigation and report back.  *Id.* ¶ 43. Deutsche Bank subsequently hired New York law firm Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss") and United Kingdom law firm Slaughter and May to conduct that internal investigation and respond to the regulators' requests.  *Id.* ¶¶ 44–46.  The two law firms conducted a broad-based investigation, reviewing 158 million electronic documents, listening to 850,000 audio files, conducting nearly 200 interviews of more than fifty bank employees, and engaging in hundreds of communications with the government.  *Id.* ¶ 50.

As the government's investigation wore on, the government came to focus on certain individuals, including the Plaintiff, the former head of Deutsche Bank's New York Derivatives Desk.  *See id.* ¶¶ 22, 66–67.  In his interview with the FBI, DOJ, SEC, CFTC, and others, Mr. Connolly admitted that he considered "Deutsche Bank's trading position in connection with Deutsche Bank's LIBOR submissions."  *Id.* ¶ 68.  He also admits that he sent three emails expressly directing LIBOR submitters to push LIBOR in one direction or another.  *See id.* ¶¶ 81, 84–85.  In one email, he directs two LIBOR submitters to drive the "3-month LIBOR as high as possible."  *Id.* ¶ 81.  In another, he tells one LIBOR submitter that he "prefer[red] [LIBOR] higher" because "[w]e have about 15 BB 1 mo receives."  *Id.* ¶ 84.  And in yet another, he tells two LIBOR submitters that "we need in NY 1 mo libor [sic] as low as possible next few days" because they had "tons of pays coming up overall."  *Id.* ¶ 85.  He also acknowledges being

copied on a fourth email in which one of his colleagues "requested an adjustment to the [LIBOR] rate." *Id.* ¶ 86.

To the prosecutors, this admitted conduct was unlawful: it was an "illegal attempt to improperly skew the LIBOR average in favor of the submitter's bank (and various traders' own personal interests) at the expense of others in the market*." Id.* ¶ 33.

The grand jury (and later jury at trial) agreed.  In 2016, the Plaintiff was indicted in the Southern District of New York on charges of wire fraud and conspiracy to commit wire fraud and bank fraud*. Id.* ¶ 71.  He was convicted after a jury trial in October 2018.  *See* Ex. 1 (Connolly Judgment in a Criminal Case) at 1.[3]  After trial, he moved for a judgment of acquittal, arguing that "the Government failed to introduce sufficient evidence to establish the elements of the counts of conviction."  *United States v. Connolly*, 2019 WL 2125044, at *1 (S.D.N.Y. May 2, 2019).  In a lengthy opinion, the district judge denied his motion.  *See id.*

In April 2015 (prior to the Plaintiff's indictment, trial, and conviction), Deutsche Bank entered into a deferred prosecution agreement and paid $2.5 billion in combined fines to the DOJ and other regulators.  Compl. ¶ 52; Ex. 2 (Deutsche Bank AG Deferred Prosecution Agreement). It terminated ten employees and disciplined at least six as a result of its investigation and was ordered to fire seven more, including a managing director, four directors, and two vice presidents, as part of its settlement agreements.  *See* Ex. 3 (Deutsche Bank AG Consent Order)

---

[3]      Citations to "Ex. __" refer to the exhibits attached to the Declaration of Karen M. Porter in Support of Defendant's Motion to Dismiss (the "Porter Declaration"), filed contemporaneously with this motion.  The Court "may take judicial notice of public documents and matters of public record," *Floyd v. Rosen*, 2022 WL 1451405, at *2 (S.D.N.Y. May 9, 2022) (citation omitted), like the ones attached to the Porter Declaration, including transcripts and other records from criminal cases, *see Smith v. Rossini*, 2020 WL 9816016, at *2 n.4 (E.D.N.Y. Nov. 30, 2020), and the contents of government websites, *see Cangemi v. United States*, 13 F.4th 115, 124 n.4 (2d Cir. 2021).

¶¶ 72–73.  Its UK-based subsidiary also pleaded guilty to criminal wire fraud.  *See* Ex. 4 (DB Group Services UK Limited Plea Agreement).

A host of other banks and individuals were prosecuted for their roles in allegedly manipulating LIBOR.  British and American prosecutors brought criminal cases against more than twenty individuals.  *See, e.g.*, Ex. 5 (UK Serious Fraud Office's Webpage on LIBOR); Ex. 6 (Robson, Thompson, Motomura Indictment); Ex. 7 (Read, Wilkinson, Goodman Criminal Complaint); Ex. 8 (Hayes, Darin Criminal Complaint).  Among those charged was Timothy Parietti, a former Derivative Desk Trader in Deutsche Bank's New York office and the Plaintiff's direct subordinate.  *See* Compl. ¶¶ 40, 68.  Parietti pleaded guilty to one charge of conspiring to commit wire fraud and bank fraud.  Ex. 9 (Parietti Judgment) at 1.  He admitted to "participati[ng] in [a] conspiracy to manipulate LIBOR," and acknowledged that he "knew what [he] was doing was wrong but," he explained, he "did what was expedient—[he] went along with what others were doing and what [his] boss," the Plaintiff in this action, "asked [him] to do."  Ex. 10 (Parietti Sentencing Letter) at 1.  Ahead of sentencing, Parietti emphasized that he was a "relatively minor participant who was directed to participate in the illicit activity by his boss," the Plaintiff.  Ex. 11 (Parietti Sentencing Memorandum) at 9.

Mr. Connolly appealed his convictions to the Second Circuit.  In January 2022, the Second Circuit reversed and ordered the district court to enter a judgment of acquittal.  *United States v. Connolly*, 24 F.4th 821 (2d Cir. 2022).  The Second Circuit observed, based on the evidence before it, that Mr. Connolly and his co-defendant "at times changed some of [the rates that Deutsche Bank submitted] to benefit their trades at the expense of their counterparties."  *Id.* at 832.  But the Second Circuit concluded that Mr. Connolly's activity did not constitute wire fraud because a LIBOR submission, even if motivated by financial gain and "violat[ive of] any

6

reasonable notion of fairness," was not illegal as long as it fell within a hypothetical range that could be requested, offered, and accepted.  *See id.* at 842–43.  The lower court had adopted the government's theory that on each day there was only one true interest rate that Deutsche Bank could submit; the Second Circuit rejected this view in reversing Mr. Connolly's conviction.  In so doing, the Second Circuit made conduct previously held by the district court to be unlawful, lawful.  The Second Circuit did not suggest that the district court (or the jury or the U.S. government prosecution) had wrongly identified the facts or wrongly applied the facts to the law; in other words, the Second Circuit did not suggest that probable cause to bring the prosecution had been lacking.  Rather, the district court (and the prosecution) had simply applied what ended up being the wrong legal standard.

The Plaintiff now brings these allegations of "malicious prosecution" against his former employer, Deutsche Bank, seeking $150 million in damages.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of any complaint that fails to allege sufficient facts that, when taken as true, are "enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While non-conclusory allegations are presumed true, for a complaint to survive a motion to dismiss, the plaintiff must do more than offer "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id.*

## ARGUMENT

Under New York law, to state a claim for malicious prosecution, a plaintiff must adequately allege four elements: (1) that the defendant initiated or continued the proceeding against the plaintiff; (2) "lack of probable cause for commencing the [criminal] proceeding"; (3) "actual malice as a motivation for the defendant's actions"; and (4) "termination of the

7

proceeding in plaintiff's favor." *Dettelis v. Sharbaugh*, 919 F.3d 161, 163-64 (2d Cir. 2019) (citation omitted).  Because of the strong public policy in favor of "encouraging proceedings against those who are apparently guilty," *Munoz v. New York*, 18 N.Y.2d 6, 9 (1966), "the New York Court of Appeals has held that the law places a heavy burden on malicious prosecution plaintiffs," *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004).

For fraud-based allegations, including those made in certain types of malicious prosecution cases, a plaintiff must further plead with particularity.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . .").

The Plaintiff fails to meet this burden on each of the first three prongs required for a malicious prosecution claim—initiation, probable cause, and actual malice—any one of which alone requires dismissal of the Complaint.

I.      The Plaintiff Fails To Adequately Allege That Deutsche Bank Initiated His Prosecution

The Plaintiff's claim must be dismissed because the Complaint fails to allege that Deutsche Bank initiated his prosecution, a necessary element of a malicious prosecution claim. *Dantas v. Citigroup, Inc.*, 779 F. App'x 16, 22-23 (2d Cir. 2019).  It is presumed in malicious prosecution actions that prosecutors acted independently—that is, that a civilian entity did *not* initiate the prosecution.  *See Gilman v. Marsh & McLennan Cos.*, 868 F. Supp. 2d 118, 128 (S.D.N.Y. 2012) ("New York law imposes a presumption that a prosecutor exercises his own independent judgment in deciding to prosecute a criminal defendant.").  This presumption means that the bar the Plaintiff must clear is "higher" even "than the Sherman Act standard faced by the plaintiffs in *Twombly*."  *Id.* at 129.

A.      The Complaint Does Not Plausibly Allege That Deutsche Bank Overtook The
        U.S. Government's Prosecutorial Volition

To initiate a prosecution, the defendant "must have *affirmatively induced the officer [or
prosecutor] to act*, such as taking an active part in the arrest and procuring it to be made or
showing active, officious and undue zeal, to the point where the officer is not acting of his
volition." *Dantas*, 779 F. App'x at 23 (emphasis added) (citation omitted).  It is not sufficient
that a defendant merely provided information or otherwise cooperated with a criminal
investigation:  "A civilian defendant who merely furnishes information to law enforcement
authorities who are then free to exercise their own independent judgment is not liable for
malicious prosecution."  *Id.*  (citation omitted) (internal quotation marks omitted).

This test is stringent.  In *Gilman v. Marsh & McLennan Cos.*, for instance, the New York
Attorney General launched an investigation into business practices alleged to have suppressed
competition and resulted in bid-rigging.  *See* 868 F. Supp. 2d at 122–23.  Marsh, a collective
corporate defendant and the plaintiffs' former employer, cooperated with that investigation.  *See
id.* at 123.  The corporate defendant conducted an internal investigation, including interviews of
the former-employees-turned-plaintiffs; waived its attorney-client privilege; and produced
twenty-three interview memoranda and thousands of pages of documents to the Attorney
General.  *See id.* at 123–24.  As here, the former employees alleged that the defendant-employer
had approved of their activities, that they had violated no laws (specifically, that the business
practice at issue was "not an improper practice"), and that the defendant-employer knew that
they had violated no laws.  *See id.* at 123, 125.  They further alleged that Marsh "ultimately
convinced the New York Attorney General to focus on specific individuals—with [the plaintiffs]
being the primary targets—instead of Marsh itself," and that, "in return for offering up [the
plaintiffs], the New York Attorney General agreed not to criminally prosecute Marsh itself, but

9

instead, would target [the plaintiffs] for prosecution." *Id.* at 123. Subsequently, Marsh's CEO stated in a press conference that "bid-rigging appears to have been confined to [one of the two plaintiffs] . . . and his group." *Id.* at 124. Marsh went on to settle with the Attorney General for $850 million plus certain other conditions. *See id.* The plaintiffs, meanwhile, were indicted by a grand jury and convicted after a trial. *See id.* 125–26. After trial, the former employees moved the trial court to vacate their judgments of conviction, and the trial court granted their request. *See id.* at 126. The former employees then brought suit against their former employer and its CEO for malicious prosecution and other claims. *Id.* at 122–23.

The defendant-employer moved to dismiss, arguing, *inter alia*, that the former employees failed to allege that it had initiated their prosecution. *Id.* at 128–29. The court agreed. It found that the allegations that the defendants knew the plaintiffs were innocent but nevertheless "encouraged," "convinced," and "colluded with" the Attorney General by "offer[ing] up [the plaintiffs] as targets for criminal prosecution" was not enough to allege initiation of their prosecution. *See id.* "Making such a claim factually plausible," the court observed, "requires more than assertions that Defendants were in communication with the Attorney General's office and reached a resolution of their disputes with that office prior to Plaintiffs' prosecution." *Id.* at 129. Indeed, "[e]ven asserting that Defendants knew of Plaintiffs' innocence is insufficient without a plausible allegation that the Defendants 'induced' the Attorney General to act." *Id.* (citation omitted). The court's strict approach to pleading this element shows the judiciary's careful effort not to discourage cooperation with investigators by opening cooperators to civil litigation.

*Baer v. Sprint Long Distance* is also instructive. 60 F. Supp. 2d 209 (S.D.N.Y. 1999). There, the plaintiff sued her former employer for malicious prosecution. As to the initiation

element, she "assert[ed] that, for all practical purposes," her former employer "was the prosecutor, since neither Detective Ames nor the District Attorney's Office ever conducted an independent investigation into the facts—they merely reviewed the results of the in-house investigation and indicted her." *Id.* at 212–13.  The court rejected her theory.  In holding that she failed to establish initiation of a criminal proceeding as a matter of law, it observed that "there is no requirement that law enforcement officers duplicate the efforts of private investigators in order to insulate the latter from liability for malicious prosecution." *Id.* at 213.  "The undisputed fact that law enforcement agents took an independent look at [the employer's] file and reached the same conclusion is sufficient for me to conclude, as a matter of law, that the prosecution was commenced by the District Attorney, not by [the defendant-employer]." *Id.*  "If the rule were otherwise," it explained, "then any time a party reported its suspicions to the authorities (rather than simply reporting that a crime had been committed), that party would render itself susceptible to a claim for malicious prosecution." *Id.*

Here, it is undisputed that Deutsche Bank did not file a criminal complaint against the Plaintiff.  Rather, there was a concerted, industry-wide investigation into potential LIBOR manipulation before, and wholly independent of, Deutsche Bank's cooperation. *See, e.g.*, Compl. ¶¶ 42–43.  And nowhere does the Complaint allege that Deutsche Bank exerted such pressure on prosecutors to overcome their volition in prosecuting the Plaintiff.  Indeed, the Plaintiff does not even allege that he was included in the alleged "White Paper" that, according to him, detailed Deutsche Bank's findings and "direct[ed] the government to the Bank's preferred targets." *Id.* ¶ 46.  All that the Complaint alleges is that Deutsche Bank conducted an internal investigation and cooperated with investigators and, in the process, that it attempted to deflect prosecutorial attention to "lower-level traders." *See, e.g.*, *id.* ¶ 64 ("Rather than direct the

DOJ to information regarding the involvement of its senior executives, Deutsche Bank and Paul Weiss instead focused attention on lower-level traders who were following the policies and practices that had been dictated by those senior executives.").  But as in *Gilman* and *Baer*, that is not sufficient.

II.      The Complaint Fails To Adequately Allege That There Was A Lack Of Probable Cause To Believe Plaintiff Committed A Crime

To state a malicious prosecution claim, the Complaint must adequately allege that there was a "lack [of] . . . probable cause for commencing the proceeding" against the Plaintiff. *Dettelis*, 919 F.3d at 164 (citation omitted).  This requirement flows from a critical policy consideration: "encouraging proceedings against those who are apparently guilty."  *Munoz*, 18 N.Y.2d at 9 ("Prosser has commented on the well-understood judicial reluctance to entertain the action which runs counter to obvious policies of the law in favor of encouraging proceedings against those who are apparently guilty [. . .].  There is no other cause of action which is more carefully guarded." (citation omitted) (internal quotation marks omitted)).

Even assuming Deutsche Bank made any prosecutorial decision (which it did not for the reasons given above), the Complaint fails to allege that Deutsche Bank lacked probable cause for several reasons.  First, the Plaintiff admits to conduct that was widely considered at the time to be criminal, including by both the U.S. government and the lower court judge.  *See* Compl. ¶¶ 33, 81–86; *United States v. Connolly*, 2019 WL 2125044 (denying his motion for a judgment of acquittal).  That a *later* appellate decision determined that the underlying conduct was not unlawful does not change the fact that believing that the Plaintiff had committed a crime was reasonable *at the time of the purported malicious prosecution.  See Rutuelo v. State*, 449 N.Y.S.2d 419, 420 (N.Y. Ct. Cl. 1982) (holding that a defendant in a malicious prosecution action does not lack probable cause to believe that the plaintiff committed a crime simply

because the relevant criminal statute was subsequently held unconstitutional); *Lazzarini v. City of N.Y.*, 2020 WL 4016225, at *2 (N.Y. Sup. Ct. July 16, 2020) ("[T]he existence of probable cause *at the time of the prosecution* is fatal to any claim for malicious prosecution." (emphasis added)); *Gaston v. City of New York*, 851 F. Supp. 2d 780, 793 (S.D.N.Y. 2012) (A claim for malicious prosecution "must be evaluated in light of the facts known or believed at the time the prosecution is initiated . . . ." (citation omitted)).

Second, Deutsche Bank is entitled to at least two separate presumptions that it had probable cause to believe the Plaintiff was committing a crime: one stemming from his indictment by a grand jury and the other by his conviction at trial. The Complaint fails to allege facts overcoming these presumptions as it must to advance this case past the pleading stage.

A.      The Complaint Fails To Adequately Allege A Lack Of Probable Cause

The Complaint must be dismissed for failing to adequately allege a lack of probable cause to believe the Plaintiff committed a crime. *See Dettelis*, 919 F.3d at 163–64. Probable cause exists when "one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). It is the existence of probable cause *at the time of the purportedly malicious prosecution* that matters. *See Gilman*, 868 F. Supp. 2d at 129–30.

The Complaint's own allegations support the existence of probable cause. By the Plaintiff's own admission, he expressly directed LIBOR submitters to move the LIBOR rate in one direction or another. *See* Compl. ¶ 81 (directing two LIBOR submitters to push the "3-month LIBOR as high as possible"); *id.* ¶ 84 (telling one LIBOR submitter that he "prefer[red] [LIBOR] higher" because "[w]e have about 15 BB 1 mo receives"); *id.* ¶ 85 (telling two LIBOR submitters that "we need in NY 1 mo libor [sic] as low as possible next few days" because they

had "tons of pays coming up overall").   Numerous government agencies thought this was a crime:  The Plaintiff caught the interest of, and was then interviewed by, the FBI, DOJ, SEC, CFTC, and others.  *See id.* ¶ 67.  And prosecutors and a grand jury thought so too:  The former brought charges of, and the latter indicted Mr. Connolly on, both wire fraud and conspiracy to commit wire and bank fraud.  *See id.* ¶ 71.  Following a trial on the merits, a jury agreed, convicting him on three counts.  *See* Ex. 1 (Connolly Judgment).  So did the district court; it denied his motion for a judgment of acquittal, which argued, *inter alia*, that what he did was not a crime.  *See United States v. Connolly*, 2019 WL 2125044, at *5.  Other defendants facing similar allegations, like Connolly's subordinate Timothy Parietti, pleaded guilty and admitted that, "[a]t the time," they "knew what [they] w[ere] doing was wrong."  *See* Ex. 9 (Parietti Judgment) at 1; Ex. 10 (Parietti Sentencing Letter) at 1.  Moreover, Deutsche Bank, one of the world's largest and most sophisticated financial institutions, paid billions of dollars in fines in connection with this conduct.

It is of no moment that this conduct was later held, as a matter of law, to not be a crime.  *See Rutuelo*, 449 N.Y.S.2d at 420 (holding that a defendant in a malicious prosecution action does not lack probable cause to believe that the plaintiff committed a crime simply because the relevant criminal statute was subsequently held unconstitutional).  As such, the Complaint fails to allege that there was a lack of probable cause to believe the Plaintiff had committed a crime.

When it comes to probable cause, this case is about the Plaintiff and the Plaintiff alone:  Specifically, whether the actions that he admits he took were reasonably believed to have been a crime at the time of the purported malicious prosecution.  They undeniably were—by government agencies, prosecutors, banks, and similarly situated defendants alike.  Deutsche

Bank's belief, therefore, was entirely reasonable.  The Complaint alleges nothing to the contrary. This malicious prosecution claim must be dismissed for this reason as well.

>   B.   Probable Cause Is Presumed Because The Plaintiff Was Indicted By A Grand Jury
>        And The Plaintiff Fails To Rebut That Presumption

Deutsche Bank is also entitled to at least two legal presumptions that it *had* probable cause—the first by virtue of the Plaintiff's indictment by a grand jury, and the second by virtue of his subsequent convictions by a trial jury.

A defendant in a malicious prosecution case enjoys a presumption that it had probable cause for the purportedly malicious prosecution where, as here, the plaintiff was indicted by a grand jury.  *See Watson v. Grady*, 2015 WL 2168189, at *15 (S.D.N.Y. May 7, 2015) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)); Compl. ¶¶ 12, 71.

Given this presumption, the Plaintiff has the additional burden of pleading some culpable defect in the grand jury proceeding that draws into question the grand jury's decision to indict him.  Specifically, he must allege "fraud, perjury, suppression of evidence[,] or other misconduct *in the grand jury*."  *Watson*, 2015 WL 2168189, at *15 (emphasis in original) (quoting *Rothstein*, 375 F.3d at 283).

The Complaint alleges no such defect in the grand jury proceedings, let alone with the requisite level of particularity.  All it alleges is that Deutsche Bank made "material misstatements to the Department of Justice," Compl. ¶ 3, without ever saying what those purported misstatements were or attempting to explain how they led to the grand jury's decision to indict him.  In fact, the *sole* mention of false statements or omissions in connection with his indictment is as follows:  "On May 31, 2016, the DOJ indicted Connolly in the Southern District of New York.  The indictment was based on Deutsche Bank's (and Paul Weiss') intentionally skewed investigation and knowingly false presentation and omission of information to the

government." *Id.* ¶ 71.  That is it.  This is precisely the sort of conclusory statement that the

Supreme Court found insufficient in *Iqbal* and *Twombly*, that falls far short of the particularity

required by Rule 9(b), and that requires dismissal of his malicious prosecution claim.  *See*

*Demosthene v. City of N.Y.*, 2019 WL 181305, at *4 (E.D.N.Y. Jan. 10, 2019) ("[I]t is beyond

dispute that a plaintiff's mere conjecture and surmise that an indictment was procured as a result

of conduct undertaken by defendants in bad faith will not meet the pleading standard for

overcoming the presumption of probable cause.  Because the presumption is founded upon the

premise that the Grand Jury acts judicially, plaintiff must do more than simply speculate about a

defendant's misconduct.  As with all claims, on a motion to dismiss, plaintiff's conclusory

allegations are insufficient to counter the presumption of probable cause established by a grand

jury indictment." (citations omitted) (internal quotation marks omitted)).

    C.     Probable Cause Is Presumed Because The Plaintiff Was Convicted At Trial And
           The Plaintiff Fails To Rebut That Presumption

A defendant in a malicious prosecution case also enjoys a presumption that it had

probable cause for the purportedly malicious prosecution when the plaintiff was subsequently

convicted at trial—even where that conviction was subsequently reversed.  *See Mitchell v.*

*Victoria Home*, 434 F. Supp. 2d 219, 228 (S.D.N.Y. 2006) (a conviction, even if later reversed,

creates a presumption that there was probable cause for the prosecution); Restatement (Second)

of Torts, § 667 ("The conviction of the accused by a magistrate or trial court, although reversed

by an appellate tribunal, conclusively establishes the existence of probable cause, unless the

conviction was obtained by fraud, perjury or other corrupt means.").

The Plaintiff was convicted at trial.  Compl. ¶ 113 ("On October 17, 201[8], Connolly

was convicted of conspiracy to commit wire and bank fraud[] in connection with the submission

of statements that could affect LIBOR."[4]).  Given that, to state a claim for malicious prosecution,

he must allege particularized facts showing that his conviction was obtained by fraud, perjury, or

other corrupt means to rebut this presumption.  *See Hutchins v. Solomon*, 2018 WL 4757970, at

*14 (S.D.N.Y. Sep. 29, 2018) (dismissing a malicious prosecution claim because "Plaintiff

fail[ed] to rebut the presumption of probable cause" by "alleg[ing] sufficient facts to indicate the

conviction was 'procured by fraud, perjury, the suppression of evidence or other police conduct

undertaken in bad faith'" (citation omitted)); Fed. R. Civ. P. 9(b).  As before, he fails to do so.

The Complaint points to purported perjured testimony during the Plaintiff's trial, relating to

whether certain documents sought to be put into evidence were business records.  *See* Compl. ¶¶

99–103.  But as the Plaintiff acknowledges, the lower court judge addressed this issue in real

time, *see id.* ¶ 104, meaning, presumably, that she did not allow it to influence the outcome of

the trial—in other words, the Plaintiff's conviction was not the result of any of these documents.

And indeed, a review of the trial transcript shows just that:  The prosecution sought to introduce

the documents into evidence as business records, *see* Ex. 12 (Trial Tr.) 802:5-806:13, the defense

objected and impeached the witness in voir dire, *id.* 806:14-816:16, and the lower court judge

sustained the objection, excluding the evidence, Ex. 13 (Trial Tr.) 879:15-17 ("Hi, everybody.

So we've had some legal issues that have come up.  [. . .]  I will tell you that the exhibits 404,

405, 406, 407 that were at issue at the end of the day yesterday are not admitted into evidence,

okay?").[5]  Even assuming the Complaint's allegations regarding the so-called perjured

documents are true, the documents were *never entered into evidence* at trial and therefore could

---

[4]      The Complaint erroneously identifies the Plaintiff's conviction date as occurring in 2019
(it occurred in 2018).

[5]      *See* n. 3 (the Court may take judicial notice of public documents and matters of public
record).

not have led to his conviction by fraud, perjury, or other corrupt means. *See Hutchins*, 2018 WL 4757970, at *14 (dismissing a malicious prosecution claim because "Plaintiff ha[d] not identified any particular lie . . . that *led to* his conviction" (emphasis added)).

III.    The Complaint Does Not Plausibly Allege That Deutsche Bank Acted With Malice

      The claim for malicious prosecution must also be dismissed for the independent reason that the Complaint does not allege that Deutsche Bank acted with malice:  that is, that Deutsche Bank commenced the Plaintiff's criminal proceeding "due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Nardelli v. Stamberg*, 44 N.Y.2d 500, 503 (1978) (citation omitted); *see also Elek v. Inc. Vill. of Monroe*, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)).

      The Complaint does not allege any intent to do injury to another—a longstanding and fundamental requirement for malice. *See, e.g.*, *Kalisch-Jarcho, Inc. v. New York*, 58 N.Y.2d 377, 385 n.4 (1983) ("Malice, in law, is a state of mind intent on perpetrating a wrongful act to the injury of another without justification." (citation omitted)); *Kilpatrick v. People*, 5 Denio 277, 281 (N.Y. Sup. Ct. 1848) (malice is "a wicked intent to inflict an injury" (citations omitted)). The Complaint alleges only that Deutsche Bank desired to cooperate with criminal investigations in return for leniency. *See, e.g.*, Compl. ¶ 126 ("Deutsche Bank was motivated by an improper and self-serving motive in helping to secure Connolly's indictment.").  At bottom, the Complaint alleges that Deutsche Bank was motivated by a desire to protect Deutsche Bank's senior management, which, it says, Deutsche Bank accomplished by somehow drawing the investigative focus to him (without ever specifying when or how that was done). *See, e.g.*, *id.* ¶¶ 14, 71.  Put differently, the Complaint concedes that Deutsche Bank harbored no specific animosity toward the Plaintiff.  Rather, Deutsche Bank's cooperation with investigators was

motivated solely by the desire to secure more lenient treatment for itself (as is the case with most or all co-defendant cooperation with prosecutors). That does not and should not constitute malice for purposes of malicious prosecution.

In describing malice in the malicious prosecution context, the Restatement of Torts explains that there are three "principal situations in which criminal proceedings are initiated for an improper purpose":

> (1) when the accuser does not believe in the guilt of the accused,
>
> (2) when the proceedings are initiated primarily because of hostility or ill will toward the accused, [and]
>
> (3) when the proceedings are initiated for the purpose of obtaining a private advantage even though the advantage might legitimately have been obtained in civil proceedings.

Restatement (Second) of Torts, § 668, cmt. d; *accord Baer*, 60 F. Supp. 2d at 212–13 (finding no malice where, *inter alia*, "no one at [the defendant corporation was alleged to have] harbored any ill will, spite or malice against [the plaintiff]"); *Ferlito v. City of Oswego*, 2006 WL 2238939, at *11 (N.D.N.Y. Aug. 4, 2006) (explaining that malice may be inferred from the fact that "the accuser did not believe in the guilt of the accused"). The Plaintiff's allegations of corporate cooperation for leniency does not fit within any of these typical scenarios constituting malice in the malicious prosecution context.

As to the first scenario, relating to whether the accuser does not believe in the guilt of the accused, the Complaint is entirely silent. Nowhere does it allege that Deutsche Bank did not believe that the Plaintiff was guilty of a crime. Instead, it alleges only that Deutsche Bank sought to deflect attention away from senior management by bringing attention to "lower-level traders," which it implies includes the Plaintiff. *See, e.g.*, Compl. ¶ 64 ("Rather than direct the DOJ to information regarding the involvement of its senior executives, Deutsche Bank and Paul

Weiss instead focused attention on lower-level traders who were following the policies and practices that had been dictated by those senior executives.").  But even if true (which it is not), that is not inconsistent with a belief in his guilt:  A defendant can deflect attention on to a co-defendant that he genuinely believes to be guilty.

As to the second scenario, relating to whether the criminal proceedings were initiated primarily because of hostility or ill will toward the accused, the Complaint effectively concedes that Deutsche Bank harbored no special animosity or ill will toward Mr. Connolly.  Rather, the Complaint pleads that Deutsche Bank's cooperation with investigators leading to his indictment and conviction was motived strictly by a desire to protect its senior management, not to secure Mr. Connolly's conviction.  *See, e.g.*, Compl. ¶¶ 3, 7, 14 (alleging that Deutsche Bank "deci[ded] to scapegoat Connolly to shield its senior management").

Nor does the Complaint allege that Deutsche Bank publicly attempted to shift sole responsibility to the Plaintiff, which one court held can give rise to an inference of malice.  *See Ramchandani v. CitiGroup, Inc.*, 2021 WL 930627, at *9 (S.D.N.Y. Mar. 11, 2021).  As described above, the Plaintiff does not even allege that he was included in the "White Paper" that, according to him, detailed Deutsche Bank's findings and "direct[ed] the government to Deutsche Bank's preferred targets."  Compl. ¶ 46.  And far from seeking to assign blame to any single individual, Deutsche Bank entered into regulatory settlements requiring it to pay billions in fines, (including a deferred prosecution agreement with the DOJ for hundreds of millions), *id.* ¶ 52; Ex. 2 (Deutsche Bank AG Deferred Prosecution Agreement).  It entered a consent order with another regulator requiring it to fire seven of its employees, including a managing director, four directors, and two vice presidents, *see* Ex. 3 (Deutsche Bank AG Consent Order) ¶ 73.  Deutsche Bank's UK-based subsidiary also pleaded guilty to criminal wire fraud.  *See* Ex. 4 (DB

Group Services UK Limited Plea Agreement).  This is not alleged to be a situation where a business attempts to shirk all responsibility by claiming that its culpability was limited to the acts of one rogue former employee.  *Cf. Ramchandani*, 2021 WL 930627, at *9.[6]

The Court has compelling, deep-rooted policy reasons to adhere to a narrow conception of malice in the malicious prosecution context.  If a potential co-defendant's bare desire to cooperate with prosecutors in exchange for leniency gives rise to an inference of malice, every co-defendant considering cooperating with prosecutors will need to weigh the risk of civil liability to their co-defendant against the benefits of cooperation.  Such a disincentive to cooperate would be particularly acute in the white collar context, where the financial stakes are high and the defendants well-resourced enough to follow through with a vindictive lawsuit.  Indeed, these cases are already being filed in this court and will invariably prompt corporations to think hard before cooperating with criminal investigations in the future.  Courts have long foreseen and sought to avoid this result.  *See, e.g.*, *Munoz*, 18 N.Y.2d at 9 (noting "the well-understood judicial reluctance to entertain the action 'which runs counter to obvious policies of the law in favor of encouraging proceedings against those who are apparently guilty'" and observing that "[t]here is no other cause of action which is more carefully guarded" (citations omitted)); *Baer*, 60 F. Supp. 2d at 213 (expressing a strong aversion to a rule that would "render [a company] susceptible to a claim for malicious prosecution" "any time [it] reported its suspicions to the authorities"); 52 Am Jur 2d Malicious Prosecution § 5 ("An action for malicious prosecution is not favored by the court because it tends to deter the prosecution of crimes and to chill free access to the courts." (citations omitted)).  This Court should too.

---

[6]     The third scenario also does not apply here.  It covers situations in which "one . . . initiates the proceedings to force the accused to pay money or to turn over land or chattels to the accuser . . . ."  Restatement (Second) of Torts, § 668, cmt. g.

In sum, because the Complaint fails to allege Deutsche Bank acted with malice, it must be dismissed.

## CONCLUSION

For the reasons set forth above, the Complaint fails to adequately allege a claim for malicious prosecution. The Plaintiff fails to meet his burden to adequately allege each of the first three elements required for a malicious prosecution claim—initiation, probable cause, and actual malice—any one of which requires dismissal of the Complaint. As such, the Court should dismiss the Complaint in its entirety with prejudice.

Dated: January 13, 2023

**SIMPSON THACHER & BARTLETT LLP**

By: */s/ Jonathan K. Youngwood*
Jonathan K. Youngwood (jyoungwood@stblaw.com)
Patrick K. Barry (patrick.barry@stblaw.com)
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

Karen M. Porter (karen.porter@stblaw.com) (*pro hac vice*)
900 G Street, NW
Washington, D.C. 20001
Telephone: (202) 636-5500
Facsimile: (202) 636-5502

*Attorneys for Defendant Deutsche Bank AG*