UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

MATTHEW CONNOLLY,   )
                                        )  Case No.: 1:22-cv-09811-JMF

                    Plaintiff,   )

                                         )  **ORAL ARGUMENT REQUESTED**

                     vs.   )

                                         )

DEUTSCHE BANK AG,   )

                                       )

                    Defendant.   )

-------------------------------------------------------------------x

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## <u>ITS MOTION TO DISMISS THE AMENDED COMPLAINT</u>

**SIMPSON THACHER & BARTLETT LLP**

Jonathan K. Youngwood (jyoungwood@stblaw.com)
Patrick K. Barry (patrick.barry@stblaw.com)
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

Karen M. Porter (karen.porter@stblaw.com) (*pro hac vice*)
900 G Street, NW
Washington, D.C. 20001
Telephone: (202) 636-5500
Facsimile: (202) 636-5502

*Attorneys for Defendant Deutsche Bank AG*

# TABLE OF CONTENTS

Page

Introduction ........................................................................................................................... 1

Background ............................................................................................................................ 3

Legal Standard ...................................................................................................................... 7

Argument ............................................................................................................................... 8

I.     Plaintiff Fails To Adequately Allege That Deutsche Bank Initiated His
Prosecution ................................................................................................................. 8

     A.     The Complaint Does Not Plausibly Allege That Deutsche Bank Overtook
The U.S. Government's Prosecutorial Volition ...................................................... 9

II.     The Complaint Fails To Adequately Allege That There Was A Lack Of Probable
Cause To Believe Plaintiff Committed A Crime ................................................................ 12

     A.     The Complaint Fails To Adequately Allege A Lack Of Probable Cause ............. 14

     B.     Probable Cause Is Presumed Because Plaintiff Was Indicted By A Grand
Jury And Plaintiff Fails To Rebut That Presumption ........................................... 15

     C.     Probable Cause Is Presumed Because Plaintiff Was Convicted At Trial
And Plaintiff Fails To Rebut That Presumption ................................................... 19

III.     The Complaint Does Not Plausibly Allege That Deutsche Bank Acted With
Malice ....................................................................................................................... 21

Conclusion ............................................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Austin v. Ford Models, Inc.*,
149 F.3d 148 (2d Cir. 1998)................................................................................. 5

*Baer v. Sprint Long Distance,*
60 F. Supp. 2d 209 (S.D.N.Y. 1999).................................................. 11, 12, 22, 25

*Battisti v. Rice*,
2017 WL 78891 (E.D.N.Y. Jan. 9, 2017) ............................................................ 18

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)................................................................................... 3, 7, 8

*Betts v. Shearman*,
751 F.3d 78 (2d Cir. 2014)................................................................................ 14

*Cangemi v. United States*,
13 F.4th 115 (2d Cir. 2021) ................................................................................ 5

*Colliton v. Cravath, Swaine & Moore LLP*,
2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008)....................................................... 5

*Colon v. City of New York*,
60 N.Y.2d 78 (1983) ........................................................................................ 15

*Dantas v. Citigroup, Inc.*,
779 F. App'x 16 (2d Cir. 2019) ........................................................................ 8, 9

*Demosthene v. City of N.Y.*,
2019 WL 181305 (E.D.N.Y. Jan. 10, 2019) ........................................................ 16

*Dettelis v. Sharbaugh*,
919 F.3d 161 (2d Cir. 2019)................................................................... 8, 12, 14

*Elek v. Inc. Vill. of Monroe*,
815 F. Supp. 2d 801 (S.D.N.Y. 2011)................................................................. 21

*Floyd v. Rosen*,
2022 WL 1451405 (S.D.N.Y. May 9, 2022) .......................................................... 5

*Gaston v. City of New York*,
851 F. Supp. 2d 780 (S.D.N.Y. 2012)................................................................. 13

*Gilman v. Marsh & McLennan Cos.*,
    868 F. Supp. 2d 118 (S.D.N.Y. 2012)............................................................................ passim

*Hutchins v. Solomon*,
    2018 U.S. WL 4757970 (S.D.N.Y. Sep. 29, 2018)........................................................ 19, 20

*Kalisch-Jarcho, Inc. v. New York*,
    58 N.Y.2d 377 (1983) ............................................................................................................ 22

*Kilpatrick v. People*,
    5 Denio 277 (N.Y. Sup. Ct. 1848) ....................................................................................... 22

*Lazzarini v. City of N.Y.*,
    2020 WL 4016225 (N.Y. Sup. Ct. July 16, 2020) ............................................................... 13

*Lee v. Town of Southampton*,
    2020 U.S. Dist. LEXIS 31376 (E.D.N.Y. Feb. 21, 2020)................................................... 17

*Mitchell v. Victoria Home*,
    434 F. Supp. 2d 219 (S.D.N.Y. 2006).................................................................................. 19

*Munoz v. New York*,
    18 N.Y.2d 6 (1966) ................................................................................................. 8, 12, 25

*Nardelli v. Stamberg*,
    44 N.Y.2d 500 (1978) ........................................................................................................... 21

*People v. Lancaster*,
    69 N.Y.2d 20 (1986) ............................................................................................................. 18

*Peterkin v. Saratoga Cty.*,
    2019 WL 6877973 (N.D.N.Y. Dec. 17, 2019) ..................................................................... 24

*Ramchandani v. CitiGroup, Inc.*,
    2021 WL 930627 (S.D.N.Y. Mar. 11, 2021) ........................................................................ 24

*Rohman v. N.Y.C. Transit Auth.*,
    215 F.3d 208 (2d Cir. 2000)................................................................................................. 21

*Rothstein v. Carriere*,
    373 F.3d 275 (2d Cir. 2004).............................................................................................. 8, 15

*Rutuelo v. State*,
    449 N.Y.S.2d 419 (N.Y. Ct. Cl. 1982)............................................................................ 13, 15

*Sander v. Enerco Grp., Inc.*,
    2023 WL 1779691 (S.D.N.Y. Feb. 6, 2023).................................................................... 23

*Selvon v. City of N.Y.*,
  2020 WL 6565148 (E.D.N.Y. Nov. 9, 2020) ........................................................ 18

*Smith v. Rossini*,
  2020 WL 9816016 (E.D.N.Y. Nov. 30, 2020) ......................................................... 5

*Stukes v. City of New York*,
  2015 WL 1246542 (E.D.N.Y. Mar. 17, 2015) ....................................................... 18

*United States v. Connolly*,
  24 F.4th 821 (2d Cir. 2022) ........................................................................... 7

*United States v. Connolly*,
  2019 WL 2125044 (S.D.N.Y. May 2, 2019) ............................................... passim

*United States v. Litvak*,
  808 F.3d 160 (2d Cir. 2015) .......................................................................... 18

*United States v. Riley*,
  621 F.3d 312 (3d Cir. 2010) ..................................................................... 12, 17

*Warren v. ResMed Corp.*,
  2022 WL 2334055 (S.D.N.Y. June 28, 2022) ..................................................... 12

*Watson v. Grady*,
  2015 WL 2168189 (S.D.N.Y. May 7, 2015) ....................................................... 15

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .............................................................. 1, 8

Federal Rule of Civil Procedure 9(b) ............................................................... 8, 16, 20

**Treatises**

52 Am Jur 2d Malicious Prosecution § 5 ............................................................... 25

Restatement (Second) of Torts, § 668, cmt. d ......................................................... 23

Defendant Deutsche Bank AG ("Deutsche Bank") hereby submits this memorandum of law in support of its motion to dismiss Plaintiff Matthew Connolly's Amended Complaint (Dkt. 24) (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). In support, Deutsche Bank states as follows:

## INTRODUCTION

Plaintiff Matthew Connolly is a former Deutsche Bank trader who seeks recourse from his former employer, Deutsche Bank, for the fact that he was investigated, indicted, and convicted as part of a multi-year, industry-wide government inquiry into interest-rate manipulation that encompassed numerous financial institutions and resulted in the prosecution of more than twenty individuals. That the Second Circuit years later concluded that the alleged interest-rate manipulation was not unlawful does not change the fact that Plaintiff was prosecuted—by the U.S. government, not Deutsche Bank—based on what was understood to be the law at the time. Indeed, Deutsche Bank agreed to pay a $2.5 billion fine, fired seven employees (including a managing director, four directors, and two vice presidents), and its London-based subsidiary pled guilty to criminal wire fraud in connection with the same allegations of interest-rate manipulation. If anyone is to blame for Mr. Connolly's situation, it is not Deutsche Bank.

Ultimately, Plaintiff's attempt to allege that he was "maliciously prosecuted" by his former employer—which requires that he allege that Deutsche Bank initiated the prosecution, a lack of probable cause for the prosecution, that Deutsche Bank was motivated by actual malice, and that the prosecution terminated in Plaintiff's favor—is deficient as a matter of law and should be dismissed with prejudice for at least three independent reasons:

*First*, the Complaint must allege that Deutsche Bank "initiated" the prosecution against Plaintiff. To allege that a private entity "initiated" the prosecution, the Complaint must allege

that Deutsche Bank overtook the prosecutor's volition in bringing the prosecution. The Complaint does not and cannot do so. Beyond conclusory statements, all that the Complaint alleges is that Deutsche Bank cooperated with investigators and received more lenient treatment for its cooperation. But as courts in this district have held time and again, that is not enough.

*Second*, to bring a claim for malicious prosecution, Plaintiff must allege a lack of probable cause to bring the prosecution. But the allegations are to the contrary: Plaintiff admits that he engaged in conduct considered by both the government and the district court at the time to be criminal. That an appellate decision *later* determined that the underlying conduct was actually lawful does not undermine the reasonableness of concluding Plaintiff had committed a crime *at the time of the purported malicious prosecution*. Deutsche Bank is also entitled to at least two independent legal presumptions that there was probable cause to believe Plaintiff was committing a crime—because Plaintiff was (1) indicted by a grand jury, and (2) convicted at trial—neither of which the Complaint rebuts, as it must.

*Third*, the Complaint does not allege that Deutsche Bank acted with the malice required for a malicious prosecution claim. The Complaint alleges that Deutsche Bank cooperated with the government's investigation in the hopes that it would be treated more leniently. But a potential co-defendant's mere cooperation with law enforcement and prosecutors is not the sort of intent to harm necessary to allege malice. If it were, every co-defendant considering cooperating with prosecutors in hopes of more lenient treatment would need to weigh the risk of civil liability *to their co-defendant* in deciding whether to come forward and tell the truth—something the courts have carefully sought to avoid for decades.

The Court afforded Plaintiff leave to amend his original complaint. *See* Order (Dkt. 21). But the new Complaint does not remedy any of the prior flaws and, accordingly, does not state a claim and the Court should dismiss the Complaint with prejudice.

## BACKGROUND[1]

This case concerns the U.S. Dollar London Interbank Offered Rate (or "LIBOR"), a benchmark rate of interest meant to reflect the rate at which banks could borrow from one another on a short-term basis. Compl. ¶ 28. This interest rate historically served as a reference point for many different types of investments, loans, and trading positions.[2] *Id.* ¶ 32. Even a small move in one direction or the other could mean substantial gains or losses for traders. *Id.*

LIBOR was computed daily from the submissions of sixteen banks made in accordance with a promulgated methodology and set of rules. *Id.* ¶ 30. Deutsche Bank was one of the sixteen banks that submitted a daily estimate used to calculate that rate. *Id.*

In 2008, the *Wall Street Journal* published an article on LIBOR discussing concerns that the benchmark rate was "becoming unreliable." *Id.* ¶ 43. The concern was that submitters were providing interest rate estimates that did not accurately reflect their true borrowing costs. *Id.*

A number of government investigations and inquiries ensued. By 2010, the United States Securities and Exchange Commission ("SEC"), Department of Justice ("DOJ"), and Commodity Futures Trading Commission ("CFTC") had opened investigations into potential LIBOR manipulation. *Id.* ¶¶ 45–46.

---

[1] This motion accepts the well-pleaded allegations in the Complaint as true solely for purposes of this motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[2] LIBOR is generally being phased out; as of January 2022, for instance, it was no longer used to secure new loans in the United States, replaced by the Secured Overnight Financing Rate (SOFR).

The CFTC approached Deutsche Bank, as one of the sixteen LIBOR submitters, and expressed that it expected Deutsche Bank to cooperate with its investigation, including by retaining outside counsel to conduct an internal investigation and report back. *Id.* ¶ 45. Deutsche Bank subsequently hired New York law firm Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss") and United Kingdom law firm Slaughter and May to conduct that internal investigation and respond to the regulators' requests. *Id.* ¶ 46. The two law firms conducted a broad-based investigation, reviewing 158 million electronic documents, listening to 850,000 audio files, conducting nearly 200 interviews of more than fifty bank employees, and engaging in hundreds of communications with the government. *Id.* ¶ 48.

As the government's investigation wore on, the government came to focus on certain individuals, including Plaintiff, the former head of Deutsche Bank's New York Derivatives Desk. *See id.* ¶¶ 63–64. In his interview with the FBI, DOJ, SEC, CFTC, and others, Mr. Connolly admitted that he considered Deutsche Bank's trading position in connection with Deutsche Bank's LIBOR submissions. *See id.* ¶ 72–73. He also admits that he sent three emails requesting LIBOR submitters to push LIBOR in one direction or another. *See id.* ¶¶ 65, 67–68. In one email, he asks two LIBOR submitters to drive the "3-month LIBOR as high as possible." *Id.* ¶ 65. In another, he tells one LIBOR submitter that he "prefer[red] [LIBOR] higher" because "[w]e have about 15 BB 1 mo receives." *Id.* ¶ 67. And in yet another, he tells two LIBOR submitters that "we need in NY 1 mo libor [sic] as low as possible next few days" because they had "tons of pays coming up overall." *Id.* ¶ 68. He also admits being included in a fourth email in which a colleague requested an adjustment to a certain LIBOR submission. *See id.* ¶ 69.

To the prosecutors, this admitted conduct was unlawful: it was an illegal attempt to improperly skew the LIBOR average in favor of the submitter's bank (or various traders' own

personal interests) at the expense of others in the market.[3]  *See, e.g.*, Ex. 1 (Connolly Indictment) ¶¶ 10, 11, 26.[4]

The grand jury (and later jury at trial) agreed.  In 2016, Plaintiff was indicted in the Southern District of New York on charges of wire fraud and conspiracy to commit wire fraud and bank fraud.  *See generally id.*  He was convicted after a jury trial in October 2018.  *See* Ex. 2 (Connolly Judgment in a Criminal Case) at 1.  After trial, he moved for a judgment of acquittal, arguing that "the Government failed to introduce sufficient evidence to establish the elements of the counts of conviction."  *United States v. Connolly*, 2019 WL 2125044, at *1 (S.D.N.Y. May 2, 2019).  In a lengthy opinion, the district judge denied his motion.  *See id.*

---

[3]    The Amended Complaint attempts to strike uncontroverted facts cited by Deutsche Bank in its first motion to dismiss (Dkt. 19) (the "First Motion to Dismiss").  For instance, Plaintiff previously acknowledged that the government viewed Plaintiff's action as an "illegal attempt to improperly skew the LIBOR average in favor of the submitter's bank (and various traders' own personal interests) at the expense of others in the market."  Compl. (Dkt. 1) at ¶ 33.  After that text was cited by Deutsche Bank in its First Motion to Dismiss, Plaintiff removed it from the Complaint.  This is repeated throughout Plaintiff's Complaint.  The Second Circuit and this Court have rejected such efforts to "blatantly change[] statement[s] of the facts in order to respond to the defendant's motion to dismiss," instead accepting the facts described in the original complaint as true for purposes of the renewed motion to dismiss.  *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008); *see also Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998) (affirming the district court's denial of leave to amend a complaint where plaintiff sought to "erase . . . admissions [made] in [the previous] complaint"), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).

[4]    "Ex. __" refer to exhibits attached to the Declaration of Karen M. Porter in Support of Defendant's Motion to Dismiss the Amended Complaint (the "Porter Declaration"), filed contemporaneously with this motion.  The Court "may take judicial notice of public documents and matters of public record," *Floyd v. Rosen*, 2022 WL 1451405, at *2 (S.D.N.Y. May 9, 2022) (citation omitted), like the ones attached to the Porter Declaration, including transcripts and other records from criminal cases, *see Smith v. Rossini*, 2020 WL 9816016, at *2 n.4 (E.D.N.Y. Nov. 30, 2020), and the contents of government websites, *see Cangemi v. United States*, 13 F.4th 115, 124 n.4 (2d Cir. 2021).

In April 2015 (prior to Plaintiff's indictment, trial, and conviction), Deutsche Bank entered into a deferred prosecution agreement and paid $2.5 billion in combined fines to the DOJ and other regulators.  Compl. ¶ 53; Ex. 3 (Deutsche Bank AG Deferred Prosecution Agreement). It terminated ten employees and disciplined at least six as a result of its investigation and was ordered to fire seven more, including a managing director, four directors, and two vice presidents, as part of its settlement agreements.  *See* Ex. 4 (Deutsche Bank AG Consent Order) ¶¶ 72–73.  Its UK-based subsidiary also pleaded guilty to criminal wire fraud.  *See* Ex. 5 (DB Group Services UK Limited Plea Agreement).

A host of other banks and individuals were prosecuted for their roles in allegedly manipulating LIBOR.  British and American prosecutors brought criminal cases against more than twenty individuals.  *See, e.g.*, Ex. 6 (UK Serious Fraud Office's Webpage on LIBOR); Ex. 7 (Robson, Thompson, Motomura Indictment); Ex. 8 (Read, Wilkinson, Goodman Criminal Complaint); Ex. 9 (Hayes, Darin Criminal Complaint).  Among those charged was Timothy Parietti, a former Derivative Desk Trader in Deutsche Bank's New York office and Plaintiff's direct subordinate.  *See* Compl. ¶ 63.  Parietti pleaded guilty to one charge of conspiring to commit wire fraud and bank fraud.  Ex. 10 (Parietti Judgment) at 1.  He admitted to "participati[ng] in [a] conspiracy to manipulate LIBOR," and acknowledged that he "knew what [he] was doing was wrong but," he explained, he "did what was expedient—[he] went along with what others were doing and what [his] boss," Plaintiff in this action, "asked [him] to do."  Ex. 11 (Parietti Sentencing Letter) at 1.  Ahead of sentencing, Parietti emphasized that he was a "relatively minor participant who was directed to participate in the illicit activity by his boss," Plaintiff.  Ex. 12 (Parietti Sentencing Memorandum) at 9.

Mr. Connolly appealed his convictions to the Second Circuit. In January 2022, the

Second Circuit reversed and ordered the district court to enter a judgment of acquittal. *United*

*States v. Connolly*, 24 F.4th 821 (2d Cir. 2022). The Second Circuit observed, based on the

evidence before it, that Mr. Connolly and his co-defendant "at times changed some of [the rates

that Deutsche Bank submitted] to benefit their trades at the expense of their counterparties." *Id.*

at 832. But the Second Circuit concluded that Mr. Connolly's activity did not constitute wire

fraud because a LIBOR submission, even if motivated by financial gain and "violat[ive of] any

reasonable notion of fairness," was not illegal as long as it fell within a hypothetical range that

could be requested, offered, and accepted. *See id.* at 842–43. The lower court had adopted the

government's theory that on each day there was only one true interest rate that Deutsche Bank

could submit; the Second Circuit rejected this view in reversing Mr. Connolly's conviction. In

so doing, the Second Circuit made conduct previously held by the district court to be unlawful,

lawful. The Second Circuit did not suggest that the district court (or the jury or the U.S.

government prosecution) had wrongly identified the facts or wrongly applied the facts to the law;

in other words, the Second Circuit did not suggest that probable cause to bring the prosecution

had been lacking. Rather, the district court (and the prosecution) had simply applied what ended

up being the wrong legal standard.

Plaintiff now brings these allegations of "malicious prosecution" against his former

employer, Deutsche Bank, seeking $150 million in damages.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of any complaint that fails to

allege sufficient facts that are "enough to raise a right to relief above the speculative level." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While non-conclusory allegations are

presumed true, the plaintiff must do more than offer "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to overcome a motion to dismiss. *Id.*

## ARGUMENT

Under New York law, to state a claim for malicious prosecution, a plaintiff must adequately allege four elements: (1) that the defendant initiated or continued the proceeding against the plaintiff; (2) "lack of probable cause for commencing the [criminal] proceeding"; (3) "actual malice as a motivation for the defendant's actions"; and (4) "termination of the proceeding in plaintiff's favor." *Dettelis v. Sharbaugh*, 919 F.3d 161, 163-64 (2d Cir. 2019) (citation omitted). Because of the strong public policy in favor of "encouraging proceedings against those who are apparently guilty," *Munoz v. New York*, 18 N.Y.2d 6, 9 (1966), "the New York Court of Appeals has held that the law places a heavy burden on malicious prosecution plaintiffs," *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004). For fraud-based allegations, including those made in certain types of malicious prosecution cases, a plaintiff must further plead with particularity. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . ."). Plaintiff fails to meet this burden on each of the first three prongs required for a malicious prosecution claim—initiation, probable cause, and actual malice—any one of which alone requires dismissal of the Complaint.

## I. Plaintiff Fails To Adequately Allege That Deutsche Bank Initiated His Prosecution

Plaintiff's claim must be dismissed because the Complaint fails to allege that Deutsche Bank initiated his prosecution, a necessary element of a malicious prosecution claim. *Dantas v. Citigroup, Inc.*, 779 F. App'x 16, 22-23 (2d Cir. 2019). It is presumed in malicious prosecution actions that prosecutors acted independently—that is, that a civilian entity did *not* initiate the prosecution. *See Gilman v. Marsh & McLennan Cos.*, 868 F. Supp. 2d 118, 128 (S.D.N.Y. 2012) ("New York law imposes a presumption that a prosecutor exercises his own independent

8

judgment in deciding to prosecute a criminal defendant.").  This presumption means that the bar

Plaintiff must clear is "higher" even "than the Sherman Act standard faced by the plaintiffs in

*Twombly.*"  *Id.* at 129.

A.      The Complaint Does Not Plausibly Allege That Deutsche Bank Overtook The
        U.S. Government's Prosecutorial Volition

To initiate a prosecution, the defendant "must have *affirmatively induced the officer [or*

*prosecutor] to act*, such as taking an active part in the arrest and procuring it to be made or

showing active, officious and undue zeal, to the point where the officer is not acting of his

volition."  *Dantas*, 779 F. App'x at 23 (emphasis added) (citation omitted).  It is not sufficient

that a defendant merely provided information or otherwise cooperated with a criminal

investigation:  "A civilian defendant who merely furnishes information to law enforcement

authorities who are then free to exercise their own independent judgment is not liable for

malicious prosecution."  *Id.*  (citation omitted) (internal quotation marks omitted).

This test is stringent.  In *Gilman v. Marsh & McLennan Cos.*, for instance, the New York

Attorney General launched an investigation into business practices alleged to have suppressed

competition and resulted in bid-rigging.  *See* 868 F. Supp. 2d at 122–23.  Marsh, a collective

corporate defendant and the plaintiffs' former employer, cooperated with that investigation.  *See*

*id.* at 123.  The corporate defendant conducted an internal investigation, including interviews of

the former-employees-turned-plaintiffs; waived its attorney-client privilege; and produced

twenty-three interview memoranda and thousands of pages of documents to the Attorney

General.  *See id.* at 123–24.  As here, the former employees alleged that the defendant-employer

had approved of their activities, that they had violated no laws (specifically, that the business

practice at issue was "not an improper practice"), and that the defendant-employer knew that

they had violated no laws.  *See id.* at 123, 125.  They further alleged that Marsh "ultimately

convinced the New York Attorney General to focus on specific individuals—with [the plaintiffs] being the primary targets—instead of Marsh itself," and that, "in return for offering up [the plaintiffs], the New York Attorney General agreed not to criminally prosecute Marsh itself, but instead, would target [the plaintiffs] for prosecution." *Id.* at 123. Subsequently, Marsh's CEO stated in a press conference that "bid-rigging appears to have been confined to [one of the two plaintiffs] . . . and his group." *Id.* at 124. Marsh went on to settle with the Attorney General for $850 million plus certain other conditions. *See id.* The plaintiffs, meanwhile, were indicted by a grand jury and convicted after a trial. *See id.* 125–26. After trial, the former employees moved the trial court to vacate their judgments of conviction, and the trial court granted their request. *See id.* at 126. The former employees then brought suit against their former employer and its CEO for malicious prosecution and other claims. *Id.* at 122–23.

The defendant-employer moved to dismiss, arguing, *inter alia*, that the former employees failed to allege that it had initiated their prosecution. *Id.* at 128–29. The court agreed. It found that the allegations that the defendants knew the plaintiffs were innocent but nevertheless "encouraged," "convinced," and "colluded with" the Attorney General by "offer[ing] up [the plaintiffs] as targets for criminal prosecution" was not enough to allege initiation of their prosecution. *See id.* "Making such a claim factually plausible," the court observed, "requires more than assertions that Defendants were in communication with the Attorney General's office and reached a resolution of their disputes with that office prior to Plaintiffs' prosecution." *Id.* at 129. Indeed, "[e]ven asserting that Defendants knew of Plaintiffs' innocence is insufficient without a plausible allegation that the Defendants 'induced' the Attorney General to act." *Id.* (citation omitted). The court's pleading requirements for this element reflect a careful effort not to discourage cooperation with investigators by opening cooperators to civil litigation.

*Baer v. Sprint Long Distance* is also instructive. 60 F. Supp. 2d 209 (S.D.N.Y. 1999). There, the plaintiff sued her former employer for malicious prosecution. For the initiation element, she "assert[ed] that, for all practical purposes," her former employer "was the prosecutor, since neither Detective Ames nor the District Attorney's Office ever conducted an independent investigation into the facts—they merely reviewed the results of the in-house investigation and indicted her." *Id.* at 212–13. The court rejected her theory. In holding that she failed to establish initiation of a criminal proceeding as a matter of law, it observed that "there is no requirement that law enforcement officers duplicate the efforts of private investigators in order to insulate the latter from liability for malicious prosecution." *Id.* at 213. "The undisputed fact that law enforcement agents took an independent look at [the employer's] file and reached the same conclusion is sufficient for me to conclude, as a matter of law, that the prosecution was commenced by the District Attorney, not by [the defendant-employer]." *Id.* "If the rule were otherwise," it explained, "then any time a party reported its suspicions to the authorities (rather than simply reporting that a crime had been committed), that party would render itself susceptible to a claim for malicious prosecution." *Id.*

Here, it is undisputed that Deutsche Bank did not file a criminal complaint against Plaintiff. Rather, there was an industry-wide government investigation into potential LIBOR manipulation before, and wholly independent of, Deutsche Bank's cooperation. *See, e.g.*, Compl. ¶ 45. And nowhere does the Complaint allege that Deutsche Bank exerted such pressure on prosecutors to overcome their volition in prosecuting Plaintiff. Indeed, Plaintiff does not even allege that he was included in the alleged "White Paper" that, according to him, detailed the Bank's findings and "direct[ed] the government to the Bank's preferred targets." *Id.* ¶ 50.

Plaintiff alleges, based on unspecified "information and belief," that Deutsche Bank precipitated his prosecution by "t[elling] the DOJ that [he] was motivated financially to manipulate the bank's LIBOR submissions . . . ." *Id.* ¶ 37. But this says nothing about *the government's* subsequent decision to prosecute Plaintiff; indeed, the lower-court judge later expressly held that motive was not necessary to any finding of criminal liability. *See United States v. Connolly*, 2019 WL 2125044, at *16, 22 (S.D.N.Y. May 2, 2019) ("a defendant may be held responsible for his participation in a scheme to defraud regardless of . . . any actual benefit"); *see also United States v. Riley*, 621 F.3d 312, 332 (3d Cir. 2010). Further, allegations on "information and belief" made without an accompanying "statement of the facts upon which the belief is based"—precisely what Plaintiff alleges here—do not state a claim. *See Warren v. ResMed Corp.*, 2022 WL 2334055, at *4 (S.D.N.Y. June 28, 2022).

At bottom, all that the Complaint alleges is that Deutsche Bank conducted an internal investigation and cooperated with investigators and, in the process, that it attempted to deflect prosecutorial attention to "lower-level traders." *See, e.g.*, Compl. ¶ 2 (Deutsche Bank "steer[ed] a Department of Justice [] investigation towards him and other lower-level employees and away from the senior executive decision makers."). But as in *Gilman* and *Baer*, that is not sufficient. The Complaint must be dismissed for failing to allege Deutsche Bank initiated the prosecution.

II.  <u>The Complaint Fails To Adequately Allege That There Was A Lack Of Probable Cause To Believe Plaintiff Committed A Crime</u>

To state a malicious prosecution claim, the Complaint must adequately allege that there was a "lack [of] . . . probable cause for commencing the proceeding" against Plaintiff. *Dettelis*, 919 F.3d at 164 (citation omitted). This requirement flows from a critical policy consideration: "encouraging proceedings against those who are apparently guilty." *Munoz*, 18 N.Y.2d at 9 ("Prosser has commented on the well-understood judicial reluctance to entertain the action which

12

runs counter to obvious policies of the law in favor of encouraging proceedings against those who are apparently guilty [. . .]. There is no other cause of action which is more carefully guarded." (citation omitted) (internal quotation marks omitted)).

Even assuming Deutsche Bank made any prosecutorial decision (which it did not for the reasons given above), the Complaint fails to allege that Deutsche Bank lacked probable cause for several reasons. First, Plaintiff admits to conduct that was widely considered at the time to be criminal, including by both the U.S. government and the lower-court judge. *See* Compl. ¶ 90; *United States v. Connolly*, 2019 WL 2125044 (denying his motion for a judgment of acquittal). That a *later* appellate decision determined that the underlying conduct was not unlawful does not change the fact that believing that Plaintiff had committed a crime was reasonable *at the time of the purported malicious prosecution. See Rutuelo v. State*, 449 N.Y.S.2d 419, 420 (N.Y. Ct. Cl. 1982) (holding that a defendant in a malicious prosecution action does not lack probable cause simply because the relevant criminal statute was subsequently held unconstitutional); *Lazzarini v. City of N.Y.*, 2020 WL 4016225, at *2 (N.Y. Sup. Ct. July 16, 2020) ("[T]he existence of probable cause *at the time of the prosecution* is fatal to any claim for malicious prosecution." (emphasis added)); *Gaston v. City of New York*, 851 F. Supp. 2d 780, 793 (S.D.N.Y. 2012) (A claim for malicious prosecution "must be evaluated in light of the facts known or believed at the time the prosecution is initiated . . . ." (citation omitted)).

Second, Deutsche Bank is entitled to at least two separate presumptions that there was probable cause to believe Plaintiff was committing a crime: one stemming from his indictment by a grand jury and the other by his conviction at trial. The Complaint fails to allege facts overcoming these presumptions as it must to advance this case past the pleading stage.

A.    The Complaint Fails To Adequately Allege A Lack Of Probable Cause

The Complaint must be dismissed for failing to adequately allege a lack of probable cause to believe Plaintiff committed a crime. *See Dettelis*, 919 F.3d at 163–64. Probable cause exists when "one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). It is the existence of probable cause *at the time of the purportedly malicious prosecution* that matters. *See Gilman*, 868 F. Supp. 2d at 129–30.

The Complaint's own allegations support the existence of probable cause. By Plaintiff's own admission, he requested LIBOR submitters move LIBOR in one direction or another. *See* Compl. ¶ 65 (directing two LIBOR submitters to push the "3-month LIBOR as high as possible"); *id.* ¶ 67 (telling one LIBOR submitter that he "prefer[red] [LIBOR] higher" because "[w]e have about 15 BB 1 mo receives"); *id.* ¶ 68 (telling two LIBOR submitters that "we need in NY 1 mo libor [sic] as low as possible next few days" because they had "tons of pays coming up overall"). Numerous government agencies thought this was a crime: Plaintiff caught the interest of, and was then interviewed by, the FBI, DOJ, SEC, CFTC, and others. *See id.* ¶ 72. And prosecutors and a grand jury thought so too: The former brought charges of, and the latter indicted Mr. Connolly on, both wire fraud and conspiracy to commit wire and bank fraud. *See* Ex. 1 (Connolly Indictment). Following a trial on the merits, a jury agreed, convicting him on three counts. *See* Ex. 2 (Connolly Judgment). So did the district court; it denied his motion for a judgment of acquittal, which argued, *inter alia*, that what he did was not a crime. *See United States v. Connolly*, 2019 WL 2125044, at *5. Other defendants facing similar allegations, like Connolly's subordinate Timothy Parietti, pleaded guilty, admitting that they "knew what [they] w[ere] doing was wrong" "[a]t the time." *See* Ex. 10 (Parietti Judgment) at 1; Ex. 11 (Parietti

Sentencing Letter) at 1.  Moreover, Deutsche Bank paid billions of dollars in fines in connection

with this conduct.  It is of no moment that this conduct was later held, as a matter of law, to not

be a crime.  *See Rutuelo*, 449 N.Y.S.2d at 420.

When it comes to probable cause, this case is about Plaintiff and Plaintiff alone:

Specifically, whether the actions that he admits he took were reasonably believed to have been a

crime at the time of the purported malicious prosecution.  They undeniably were—by

government agencies, prosecutors, banks, and similarly situated defendants alike.  Deutsche

Bank's belief, therefore, was entirely reasonable.  The Complaint alleges nothing to the contrary.

This malicious prosecution claim must be dismissed for this reason as well.

B.     Probable Cause Is Presumed Because Plaintiff Was Indicted By A Grand Jury
       And Plaintiff Fails To Rebut That Presumption

Deutsche Bank is also entitled to at least two legal presumptions that there *was* probable

cause—the first by virtue of Plaintiff's indictment by a grand jury, and the second by virtue of

his subsequent convictions by a trial jury.

A defendant in a malicious prosecution case enjoys a presumption that it had probable

cause for the purportedly malicious prosecution where, as here, the plaintiff was indicted by a

grand jury.  *See Watson v. Grady*, 2015 WL 2168189, at *15 (S.D.N.Y. May 7, 2015) (quoting

*Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)); Compl. ¶¶ 12, 71.  Given this presumption,

Plaintiff has the additional burden of pleading some culpable defect in the grand jury proceeding

that draws into question the grand jury's decision to indict him.  Specifically, he must allege

"fraud, perjury, suppression of evidence[,] or other misconduct *in the grand jury*."  *Watson*, 2015

WL 2168189, at *15 (emphasis in original) (quoting *Rothstein*, 375 F.3d at 283).  And as with

other claims sounding in fraud, he "must state with particularity the circumstances constituting

fraud . . . ."  Fed. R. Civ. P. 9(b).  Plaintiff's retooled complaint tries to raise four categories of

allegations to that end, all of which are based on unspecified "information and belief" and much of which rests on purported "omissions." None suffice to rebut the presumption arising from his indictment. *See Demosthene v. City of N.Y.*, 2019 WL 181305, at *4 (E.D.N.Y. Jan. 10, 2019) ("[I]t is beyond dispute that a plaintiff's mere conjecture and surmise that an indictment was procured as a result of conduct undertaken by defendants in bad faith will not meet the pleading standard for overcoming the presumption of probable cause.").

First, Plaintiff alleges that FBI Agent Weeks misled the grand jury into believing that Plaintiff's "communications with Deutsche Bank's LIBOR submitters were attempts to manipulate Deutsche Bank's LIBOR submissions" based on "explanations and interpretations" given to him by Deutsche Bank. Compl. ¶¶ 64, 81. The portion of the transcripts Plaintiff cites reflect Weeks describing the government's investigation and the government's conclusions based on interviews (including, presumably, of Plaintiff himself, *see id.* ¶ 72), not any unspecified "explanations and interpretations" by Deutsche Bank. *See* Ex. 13 (Grand Jury Tr.) 3:20-5:5, 50:11-19. Plaintiff acknowledges sending emails that were shown to the grand jury. These emails show Plaintiff telling LIBOR submitters his preferred rates in the hopes the submitters would submit rates in his preferred direction, *see id.* ¶¶ 64, 65, 67–68, 70, which was precisely what was understood to be unlawful at that time, *see supra* Section II(A). Nothing Plaintiff alleges with respect to the grand jury process suggests fraud, perjury, suppression of evidence, or other misconduct.

Second, Plaintiff alleges fraud-by-omission by claiming that Deutsche Bank failed to inform the DOJ that his conduct was not prohibited under the BBA's LIBOR Instruction. *See, e.g.*, Compl. ¶ 81. But the Complaint concedes that the BBA's LIBOR Instruction was not a secret: "It was *well known in and out of the bank* that traders that traders at various banks would

sometimes make requests to the LIBOR submitter at their bank," *id.* ¶ 34 (emphasis added), and

that this was permissible under the BBA's LIBOR Instruction, *see id.* ¶¶ 33–34. *See also id.* ¶ 35

(asserting that, "[i]n the various LIBOR related trials brought by the DOJ since 2015,"

"defendants put forth the defense that there [their conduct was not] illegal" because it was

"consistent with the BBA LIBOR Instruction"; Plaintiff was indicted based on grand jury

proceedings in May and August 2016). Moreover, the BBA's LIBOR Instruction was a publicly

available document. *See, e.g.*, Ex. 15 (2004 BBA LIBOR Instruction). The Complaint cannot

plausibly allege that Deutsche Bank somehow fraudulently misled the DOJ (and in a way that

tainted the grand jury's finding of probable cause) by allegedly omitting a public fact.

Third, Plaintiff cannot undermine the grand jury's finding of probable cause by alleging

that the Bank somehow misled the government (and by extension, the grand jury) that Plaintiff

was motivated by a desire to personally profit in submitting his LIBOR positions. As described

in Section I(A), motive is not necessary to any finding of probable cause for criminal liability.

*See supra* Section I(A) (citing *United States v. Connolly*, 2019 WL 2125044 (S.D.N.Y. May 2,

2019), and *United States v. Riley*, 621 F.3d 312, 332 (3d Cir. 2010)). And again, nothing in the

grand jury transcripts or otherwise alleged by Plaintiff suggests any fraud, perjury, or

suppression of evidence to taint the grand jury's finding of probable cause. *Cf. Lee v. Town of*

*Southampton*, 2020 U.S. Dist. LEXIS 31376, at *50 (E.D.N.Y. Feb. 21, 2020) (unequivocal

documentary evidence (like Plaintiff's emails to LIBOR submitters in this case) established

probable cause not overcome by alleged testimonial improprieties).

Fourth, Plaintiff's allegations regarding supposed omissions from FBI Agent Weeks's

grand jury testimony that purportedly trace back to Deutsche Bank—approval of Bank policies

by senior executives; Deutsche Bank's extensive legal and compliance department (Compl. ¶

84)—do not amount to fraud, perjury, or suppression of evidence sufficient to taint the grand jury's finding of probable cause. *Cf. Battisti v. Rice*, 2017 WL 78891, at *11 (E.D.N.Y. Jan. 9, 2017) (holding that "unsupported allegations that" the defendants, *inter alia*, failed to disclose exculpatory evidence are "not sufficient to overcome the presumption of probable cause resulting from a grand jury indictment"); *Stukes v. City of New York*, 2015 WL 1246542, at *6 (E.D.N.Y. Mar. 17, 2015) (finding "alleg[ations] . . . that [the d]efendants failed to turn over exculpatory evidence for presentation to the grand jury" to be "conclusory statements [that] fail to overcome the presumption of probable cause").

As a threshold matter, the prosecution has no obligation to present Plaintiff's full defense in a grand jury proceeding. *See Selvon v. City of N.Y.*, 2020 WL 6565148, at *3 (E.D.N.Y. Nov. 9, 2020) (noting that the failure to present potentially exculpatory information to the grand jury was not a "wrongful act" sufficient to rebut the existence of probable cause arising from a grand jury indictment because "the prosecutor was not under an affirmative obligation to include exculpatory information in the grand jury presentation" (citing *People v. Lancaster*, 69 N.Y.2d 20, 25-26 (1986)). Furthermore, the facts Plaintiff alleges were omitted were either widely (and publicly) known or entirely beside the point. With respect to the Bank's compliance program, for instance, the Bank publicly acknowledged in April 2015 that it "ha[d] implemented and will continue to implement a compliance program designed to prevent and detect manipulation and interbank coordination of benchmark rate submissions throughout its operations." Ex. 3 (Deutsche Bank AG Deferred Prosecution Agreement) ¶ 9. With respect to alleged involvement by supervisors, even if "supervisors directed or encouraged the fraud," that is not a defense to illegal conduct. *United States v. Connolly*, 2019 WL 2125044, at *13 (S.D.N.Y. May 2, 2019) (citing *United States v. Litvak*, 808 F.3d 160, 190 (2d Cir. 2015)). The government's decision

not to present certain alleged facts (publicly known and/or irrelevant) to the grand jury does not taint the grand jury's finding of probable cause. Plaintiff's claim must be dismissed for failing to rebut the presumption of probable cause arising from his indictment.

### C. Probable Cause Is Presumed Because Plaintiff Was Convicted At Trial And Plaintiff Fails To Rebut That Presumption

A defendant in a malicious prosecution case also enjoys a presumption that it had probable cause for the purportedly malicious prosecution when the plaintiff was subsequently convicted at trial—even where that conviction was subsequently reversed. *See Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 228 (S.D.N.Y. 2006) (a conviction, even if later reversed, creates a presumption that there was probable cause for the prosecution).

Plaintiff was convicted at trial. Compl. ¶ 107.[5] Given that, to state a claim for malicious prosecution, he must allege particularized facts showing that his conviction was obtained by fraud, perjury, or other corrupt means to rebut this presumption. *See Hutchins v. Solomon*, 2018 WL 4757970, at *14 (S.D.N.Y. Sep. 29, 2018) (dismissing a malicious prosecution claim because "Plaintiff fail[ed] to rebut the presumption of probable cause" by "alleg[ing] sufficient facts to indicate the conviction was 'procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith'" (citation omitted)); Fed. R. Civ. P. 9(b). As before, he fails to do so.

The Complaint points to purported perjured testimony during trial, relating to whether certain documents sought to be put into evidence were business records. *See* Compl. ¶¶ 92–95. But as Plaintiff acknowledges, the lower-court judge addressed this issue in real time, *see id.* ¶

---

[5] The Complaint erroneously identifies Plaintiff's conviction date as occurring in 2019 (it occurred in 2018).

97, meaning, presumably, that she did not allow it to influence the outcome of the trial and Plaintiff's conviction was not the result of any of these documents. And indeed, a review of the trial transcript shows just that: The prosecution sought to introduce the documents into evidence as business records, *see* Ex. 16 (Trial Tr.) 802:5-806:13, the defense objected and impeached the witness in voir dire, *id.* 806:14-816:16, and the lower-court judge sustained the objection, excluding the evidence, Ex. 17 (Trial Tr.) 879:15-17 ("Hi, everybody. So we've had some legal issues that have come up. [. . .] I will tell you that the exhibits 404, 405, 406, 407 that were at issue at the end of the day yesterday are not admitted into evidence, okay?"). Even assuming the Complaint's allegations regarding the so-called perjured documents are true, the documents were *never entered into evidence* at trial and therefore could not have led to his conviction by fraud, perjury, or other corrupt means. *See Hutchins*, 2018 WL 4757970, at *14 (dismissing where "Plaintiff ha[d] not identified any particular lie . . . that *led to* his conviction" (emphasis added)).

Plaintiff also alleges "false information from Deutsche Bank that Connolly had a personal financial interest in attempting to increase bank revenue through LIBOR submission adjustments," noting the prosecutor's opening statement at trial: "In [Connolly and Black's] quest to make every extra dollar they could . . . they cheated by rigging the LIBOR interest rate." Compl. ¶ 91. But as discussed *supra* Section I(A), a direct, personal pecuniary motive is not a necessary element of wire fraud and therefore could not have tainted the jury's finding of probable cause. Plaintiff, moreover, misstates what was presented at trial, where the prosecutor described Plaintiff's incentive to make money for the firm as his motive—which only secondarily impacted any personal financial incentive: "they did it just to make more money— more money for their bank and in turn more money for themselves." Ex. 18 (Trial Tr.) 44:10-11. And he then clarifies that "they continued to do this, you will see, all to make more money for

Deutsche Bank and in turn *hoping for* a bigger bonus and to make more money for themselves." Ex. 18 (Trial Tr.) 52:6-8 (emphasis added). The implication, here, is that by advancing their employer's interests, they were boosting their own professional prospects and perhaps could have been rewarded with a higher *discretionary* bonus; the prosecutor was not suggesting that he had a direct financial interest in manipulation, as the Complaint suggests.

Finally, the Complaint alleges that prosecutors pushed the narrative that "Connolly directed his subordinates to submit false LIBOR [submissions] to advance Deutsche Bank's traders' interests." Compl. ¶ 90. And this, it says, was "based on the false narrative developed [by] Deutsche Bank [that] LIBOR submitters were [] subordinate to Connolly," "report[ed] directly to him," and that he "g[a]ve them directives." *Id.* But the relationship between Plaintiff and the LIBOR submitters, whether direct reports or equals, is immaterial to the question of whether Plaintiff manipulated LIBOR. Put differently, one could manipulate LIBOR through another person even if that person is not under their direct control.

For all of these reasons, the Complaint does not rebut the presumption that there was probable cause at trial and must be dismissed for this reason alone.

III.    The Complaint Does Not Plausibly Allege That Deutsche Bank Acted With Malice

The Complaint must also be dismissed for the independent reason that it does not allege that Deutsche Bank acted with malice: that is, that Deutsche Bank commenced Plaintiff's criminal proceeding "due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Nardelli v. Stamberg*, 44 N.Y.2d 500, 503 (1978) (citation omitted); *see also Elek v. Inc. Vill. of Monroe*, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)).

The Complaint does not allege any intent to do injury to another—a longstanding and fundamental requirement for malice. *See, e.g.*, *Kalisch-Jarcho, Inc. v. New York*, 58 N.Y.2d 377,

385 n.4 (1983) ("Malice, in law, is a state of mind intent on perpetrating a wrongful act to the injury of another without justification." (citation omitted)); *Kilpatrick v. People*, 5 Denio 277, 281 (N.Y. Sup. Ct. 1848) (malice is "a wicked intent to inflict an injury" (citations omitted)). The Complaint alleges only that Deutsche Bank desired to cooperate with criminal investigations in return for potential leniency. *See, e.g.*, Compl. ¶ 120 ("Deutsche Bank was motivated by an improper and self-serving motive in helping to secure Connolly's indictment."). At bottom, the Complaint alleges that Deutsche Bank was motivated by a desire to protect Deutsche Bank's senior management, which, it says, Deutsche Bank accomplished by somehow drawing the investigative focus to him (without ever specifying when or how that was done). *See, e.g.*, *id.* ¶ 104. The Complaint concedes that Deutsche Bank harbored no specific animosity toward Plaintiff; rather, Deutsche Bank's cooperation with investigators was motivated solely by the desire to secure more lenient treatment for itself (as is the case with most or all co-defendant cooperation with prosecutors). That does not and should not constitute malice.

In parsing intent, the Restatement of Torts explains that there are three "principal situations in which criminal proceedings are initiated for an improper purpose":

(1) when the accuser does not believe in the guilt of the accused,

(2) when the proceedings are initiated primarily because of hostility or ill will toward the accused, [and]

(3) when proceedings are initiated for the purpose of obtaining a private advantage even though [it] might legitimately have been obtained in civil proceedings.

Restatement (Second) of Torts, § 668, cmt. d; *accord Baer*, 60 F. Supp. 2d at 212–13 (finding no malice where, *inter alia*, "no one at [the defendant corporation was alleged to have] harbored any ill will, spite or malice against [the plaintiff]"). The Plaintiff's allegations of corporate cooperation for leniency do not fit within any of these scenarios.

With respect to the first scenario (defendant's belief in the guilt of the accused), Plaintiff asks the Court to ignore all pleaded and judicially noticeable facts showing that Deutsche Bank believed Plaintiff's behavior to be unlawful, including that Deutsche Bank (i) officially admitted that employees acting within the scope of their employment submitted "false and misleading" LIBOR submission and that those employees were "engaged in a deceptive course of conduct," Compl. ¶ 59; (ii) paid $2.5 billion in combined fines to the DOJ and other regulators in connection with the misconduct, se *id.* ¶ 54; (iii) terminated ten employees and disciplined at least six as a result of its investigation and was ordered to fire seven more, *see* Ex. 4 (Deutsche Bank AG Consent Order) ¶¶ 72–73; and (iv) had its UK-based subsidiary plead guilty to criminal wire fraud, *see* Ex. 5 (DB Group Services UK Limited Plea Agreement).  According to Plaintiff, this was all one elaborate ruse.  But "a court need not feel constrained to accept as truth conflicting pleadings that make no sense . . . or that are contradicted either by statements in the complaint itself or by documents upon which [the] pleadings rely."  *See Sander v. Enerco Grp., Inc.*, 2023 WL 1779691, at *2 (S.D.N.Y. Feb. 6, 2023).

With respect to the second scenario (whether proceedings were initiated primarily because of hostility or ill will toward the accused), the Complaint effectively concedes that Deutsche Bank harbored no special animosity or ill will toward Plaintiff.  Rather, the Complaint alleges that Deutsche Bank's cooperation with investigators leading to his indictment and conviction was motived strictly by a desire to protect its senior management, not to secure Plaintiff's conviction.  *See, e.g.*, Compl. ¶ 17 (alleging that Deutsche Bank "deci[ded] to scapegoat Connolly to shield its senior management").  This, too, requires dismissal for failure to adequately allege malice.  *See, e.g.*, *Peterkin v. Saratoga Cty.*, 2019 WL 6877973, at *1, 7

(N.D.N.Y. Dec. 17, 2019) (holding that a plaintiff's allegation that defendants' "purpose and intent" was to make him a "scapegoat" was not enough to adequately allege malice).

Nor does the Complaint allege that Deutsche Bank publicly attempted to shift sole responsibility to Plaintiff, which one court held can give rise to an inference of malice. *See Ramchandani v. CitiGroup, Inc.*, 2021 WL 930627, at *9 (S.D.N.Y. Mar. 11, 2021). As described above, Plaintiff does not even allege that he was included in the "White Paper" that, according to him, detailed Deutsche Bank's findings and "direct[ed] the government to Deutsche Bank's preferred targets." Compl. ¶ 50. And far from seeking to assign blame to any single individual, Deutsche Bank entered into regulatory settlements requiring it to pay billions in fines, (including a deferred prosecution agreement with the DOJ for hundreds of millions). *See id.* ¶¶ 52, 54; Ex. 2 (Deutsche Bank AG Deferred Prosecution Agreement). It entered a consent order with another regulator requiring it to fire seven of its employees, including a managing director, four directors, and two vice presidents. *See* Ex. 4 (Deutsche Bank AG Consent Order) ¶ 73. Deutsche Bank's UK-based subsidiary also pleaded guilty to criminal wire fraud. *See* Ex. 5 (DB Group Services UK Limited Plea Agreement). This is not alleged to be a situation where a business attempts to shirk all responsibility by claiming that its culpability was limited to the acts of one rogue former employee. *Cf. Ramchandani*, 2021 WL 930627, at *9.[6]

The Court has compelling, deep-rooted policy reasons to adhere to a narrow conception of malice in the malicious prosecution context. If a potential co-defendant's bare desire to cooperate with prosecutors in exchange for leniency gives rise to an inference of malice, every co-defendant considering cooperating with prosecutors will need to weigh the risk of civil

---

[6]     The third scenario also does not apply here. It covers situations in which "one . . . initiates the proceedings to force the accused to pay money or to turn over land or chattels to the accuser . . . ." Restatement (Second) of Torts, § 668, cmt. g.

liability to their co-defendant against the benefits of cooperation. Such a disincentive to cooperate would be particularly acute in the white collar context, where the financial stakes are high and the defendants well-resourced enough to follow through with a vindictive lawsuit. Indeed, these cases are already being filed in this court and will invariably prompt corporations to think hard before cooperating with criminal investigations in the future. Courts have long foreseen and sought to avoid this result. *See, e.g.*, *Munoz*, 18 N.Y.2d at 9 (noting "the well-understood judicial reluctance to entertain the action 'which runs counter to obvious policies of the law in favor of encouraging proceedings against those who are apparently guilty'" and observing that "[t]here is no other cause of action which is more carefully guarded" (citations omitted)); *Baer*, 60 F. Supp. 2d at 213 (expressing a strong aversion to a rule that would "render [a company] susceptible to a claim for malicious prosecution" "any time [it] reported its suspicions to the authorities"); 52 Am Jur 2d Malicious Prosecution § 5 ("An action for malicious prosecution is not favored by the court because it tends to deter the prosecution of crimes and to chill free access to the courts." (citations omitted)). This Court should too.

In sum, because the Complaint fails to allege Deutsche Bank acted with malice, it must be dismissed.

## CONCLUSION

For the reasons set forth above, the Complaint fails to adequately allege a claim for malicious prosecution. Plaintiff fails to meet his burden to adequately allege each of the first three elements required for a malicious prosecution claim—initiation, probable cause, and actual malice—any one of which requires dismissal of the Complaint. As such, in accordance with its Order (Dkt. 21) dated January 17, 2023, the Court should dismiss the Complaint in its entirety with prejudice.

Dated: April 3, 2023

**SIMPSON THACHER & BARTLETT LLP**

By: */s/ Jonathan K. Youngwood*
Jonathan K. Youngwood (jyoungwood@stblaw.com)
Patrick K. Barry (patrick.barry@stblaw.com)
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

Karen M. Porter (karen.porter@stblaw.com) (*pro hac vice*)
900 G Street, NW
Washington, D.C. 20001
Telephone: (202) 636-5500
Facsimile: (202) 636-5502

*Attorneys for Defendant Deutsche Bank AG*