UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATTHEW CONNOLLY,

                      Plaintiff,

     v.

DEUTSCHE BANK AG,

                      Defendant.

Case No.: 1:22-cv-09811-JMF

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## MOTION TO DISMISS THE AMENDED COMPLAINT

HARRIS ST. LAURENT & WECHSLER LLP
40 Wall Street, 53rd Floor
New York, NY 10005
T. (212) 397-3370
F. (212) 202-6206

*Attorneys for Plaintiff Matthew Connolly*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ........................................................................................................................... 4

   I.   Legal Standard for a Motion to Dismiss .......................................................... 4

       A.  The Rule 9(b) Standard is Inapplicable .................................................... 4

  II.  The Amended Complaint States a Claim for Malicious Prosecution ................. 6

       A.  Deutsche Bank Initiated and Continued the Prosecution ............................ 6

       B.  The Proceeding Terminated in Favor of Connolly ..................................... 11

       C.  The Absence of Probable Cause ............................................................... 11

           1.  The Amended Complaint Rebuts the Presumption Created by the Indictment .... 17

           2.  The Amended Complaint Rebuts the Presumption Created by the Conviction.... 20

       D.  The Complaint Alleges Deutsche Bank Had Actual Malice ...................................... 23

CONCLUSION ....................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ........................................................................................................ passim

*Baer v. Sprint Long Distance*
    60 F. Supp. 2d 209 (S.D.N.Y. 1999) ............................................................................... 9

*Bah v. Apple Inc.*
    No. 19-CV-3539 (PKC), 2020 WL 614932 (S.D.N.Y. Feb. 10, 2020) ............................... 8, 24

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ........................................................................................................ passim

*Burch v. Pioneer Credit Recovery, Inc.*
    551 F.3d 122 (2d Cir. 2008) ............................................................................................. 4

*Cameron v. City of New York*
    598 F.3d 50 (2d Cir. 2010) ............................................................................................... 6

*Cantalino v. Danner*
    96 N.Y.2d 391 (2001) ...................................................................................................... 11

*Chimurenga v. City of New York*
    45 F.Supp. 2d 337 (S.D.N.Y. 1999) ................................................................................ 7

*Coscia v. El Jamal*
    156 A.D.3d 861 (2d Dep't 2017) ...................................................................................... 7

*D'Angelo v. Kirschner*
    288 Fed. App'x 724 (2d Cir. 2008) .................................................................................. 22

*Dantas v. Citigroup, Inc.*
    779 Fed. App'x 16 (2d Cir. 2019) .................................................................................... 10

*Delince v. City of New York*
    No. 10-CV-4323, 2011 WL 666347 (S.D.N.Y. Feb. 7, 2011) .......................................... 10

*Emanuel v. Griffin*
    No. 13-CV-1806 (JMF), 2013 WL 5477505 (S.D.N.Y. Oct. 2, 2013) ............................. 8

*Gilman v. Marsh & McLennan Companies, Inc.*
    868 F. Supp. 2d 118 (S.D.N.Y. 2012) .............................................................................. 9, 10

*Goldman v. Belden*
    754 F.2d 1059 (2d Cir. 1985) .......................................................................................... 3

*Hicks v. Marchman*
  719 F. App'x 61 (2d Cir. 2018) ...................................................................... 17

*Jain v. City of New York*
  No. 20-CV-5442 (JMF), 2021 WL 6064204 (S.D.N.Y. Dec. 22, 2021) ........................ 3, 4

*Janetka v. Dabe*
  892 F.2d 187 (2d Cir. 1989)................................................................... 11, 23

*Jessamy v. Jakasal*
  No. 21-CV-214, 2022 WL 1669512 (2d Cir. May 26, 2022) .................................... 8

*Jorgensen v. Cnty. of Suffolk*
  558 F. Supp. 3d 51 (E.D.N.Y. 2021) ............................................................ 17

*Kurtz v. Hansell*
  No. 20-CV-3401 (PAE), 2021 WL 1143619 (S.D.N.Y. Mar. 24, 2021)........................... 23

*Lupski v. County of Nassau*
  32 A.D.3d 997 (2d Dep't 2006) ................................................................. 7

*Manganiello v. City of New York*
  612 F.3d 149 (2d Cir. 2010)................................................................... 17

*Maskantz v. Hayes*
  39 A.D.3d 211 (1st Dep't 2007) ................................................................ 7

*Mesiti v. Wegman*
  307 A.D.2d 339 (2d Dep't 2003) ............................................................... 9

*Michaels v. MVP Health Care, Inc.*
  167 A.D.3d 1368 (3d Dep't 2018)............................................................... 17

*Moorhouse v. Std., New York*
  124 A.D.3d 1 (1st Dep't 2014) .............................................................. 8, 9

*Place v. Ciccotelli*
  121 A.D.3d 1378 (3d Dep't 2014) ............................................................... 8

*Ramchandani v. Citigroup, Inc.*
  No. 19-CV-9124 (VM), 2021 WL 930627 (S.D.N.Y. Mar. 11. 2021)........................... passim

*Ramos v. City of New York*
  285 A.D. 284 (1st Dep't 2001) ......................................................... 12, 17, 21

*Ricciuti v. N.Y.C. Transit Auth.*
    124 F.3d 123 (2d Cir. 1997) ..................................................................................... 23

*Smith-Hunter v. Harvey*
    95 N.Y.2d 191 (2000) ......................................................................................... 6, 23

*Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc.*
    No. 99-CV-4677, 2002 WL 737477 (S.D.N.Y. Apr. 25, 2002) .................................. 9

*Torres v. Jones*
    47 N.E.3d 747 (N.Y. 2016) ..................................................................................... 12

*United States v. Connolly*
    24 F.4th 821 (2d Cir. 2022) ............................................................................... 11, 14

*United States v. Connolly*
    No. 16-CR-0370 (S.D.N.Y) ..................................................................................... 1, 5

*United States v. Guzman*
    No. 11-CV-5834, 2013 WL 543343 (S.D.N.Y Feb. 14, 2013) .................................. 10

*Werkheiser v. Cnty. of Broome*
    No. 22-CV-73 (MAD/TWD), 2023 WL 1927696 (N.D.N.Y. Feb. 9, 2023) .......................... 12

*Whitmore v. City of New York*
    80 A.D.2d 638 (2d Dep't 1981) .............................................................................. 20

*Williams v. City of New York*
    508 F.2d 356 (2d Cir. 1974) .................................................................................. 12

*Williams v. CVS Pharm., Inc.*
    126 A.D.3d 890 (2d Dep't 2015) ........................................................................... 7, 8

*Williston v. Jack Resnick & Sons, Inc.*
    77 A.D.3d 822 (2d Dep't 2019) ................................................................................ 8

*Ziming Shen v. City of New York*
    725 F. App'x 7 (2d Cir. 2018) ......................................................................... passim

**Rules**
Federal Rules of Civil Procedure Rule 8 ....................................................... 3, 4, 6, 19

Federal Rules of Civil Procedure Rule 9 ............................................................ passim

Federal Rules of Civil Procedure Rule 12 ................................................................. 4

Plaintiff Matthew Connolly submits this memorandum of law in opposition to the motion to dismiss the Amended Complaint of Defendant Deutsche Bank AG ("Deutsche Bank" or the "Bank").[1]

## PRELIMINARY STATEMENT

Deutsche Bank starts its motion to dismiss by asking the Court to adopt its version of the principal disputed facts in this case — asserting that it merely cooperated with prosecutors, came forward and told the entire truth. Mot. to Dismiss at 2. The allegations in the Amended Complaint are entirely the opposite, that Deutsche Bank intentionally and wrongfully failed to tell the government the truth in order to protect its senior management and direct the prosecutors to Connolly, an innocent man.

The Amended Complaint alleges that Deutsche Bank, in a complex investigation, acted as a deputized sheriff, an investigatory arm, and an interpreter of documents and information for the government. Am. Compl. ¶¶ 48-51, 64, 70, 100-103.[2] It alleges Deutsche Bank manipulated this privileged position to intentionally misdirect the government's investigation away from Deutsche Bank's high-level executives and towards Connolly (*id*. ¶¶ 2, 4, 51-52, 55-62, 102-105, 109-110) and that Deutsche Bank carried this out by knowingly providing misleading, false and inaccurate information to the prosecutors, and by intentionally withholding important information. *Id.* ¶¶ 5, 7, 10, 37, 39-42, 59-61, 70, 80-85, 87, 90-91, 102, 108-110. It further alleges that Deutsche Bank

---

[1] Unless otherwise noted, "Ex. __" refers to the exhibits attached to the Declaration of Julie Withers submitted herewith in opposition to Defendant's motion to dismiss the Amended Complaint.

[2] Deutsche Bank's role as a deputized investigator for the government is not merely an allegation; this was found to be the case by Judge McMahon, who, after a lengthy *Kastigar* hearing, wrote an opinion finding that that "the United States outsourced its investigation to Deutsche Bank and its lawyers." *United States v. Connolly*, No. 16-CR-370, Dkt. 432 at 19 (S.D.N.Y May 2, 2019).

fabricated documents to be used as evidence at the trial and sent one of its employees to commit perjury at Connolly's trial. *Id.* ¶¶ 92-96.[3]

Deutsche Bank is entitled to the opportunity, at summary judgment or trial, to tell its version of events — that all it did was "mere cooperation with law enforcement" "to come forward and tell the truth." Mot. to Dismiss at 2. However, at this stage of the case, Deutsche Bank's counter version of events presents a series of disputed facts and inferences that provide no grounds for dismissal of the Amended Complaint.

In addition to its main factual premise, that it told the government the truth, Deutsche Bank asks this Court to decide other material disputed facts in its favor, including whether the government would have focused on Connolly without the Bank's direction (Mot. to Dismiss at 4); whether, without the Bank's influence, the prosecutors believed that Connolly's emails were attempts to skew LIBOR to his personal interests (*id.* at 4-5); and whether the grand jury was tainted by false evidence presented about Connolly's alleged personal financial motives. *Id.* at 20. None of these factual disputes are suitable for a motion to dismiss.

In support of its own version of events, Deutsche Bank also presumes facts, introduces information from outside the Amended Complaint, and asks this Court to draw inferences and conclusions in Deutsche Bank's favor. This is, again, the opposite of the way a motion to dismiss is to be evaluated. Examples include, Deutsche Bank arguing that: (1) because the Bank entered a plea deal, this proves the Bank's purported good faith, honest and complete cooperation (*id.* at 6,

---

[3] The false documents and perjury at Connolly's trial is not merely an allegation. Judge McMahon called the false documents and untruthful affidavits signed by a Deutsche Bank employee "an outright lie" and a "misrepresentation to this Court." Ex. A, Trial Tr. 817:22-23, 836:15-837:01. Judge McMahon stated, "I find it appalling" to "try to introduce as a business record something that was manifestly not a business record and to try to slip that by me." *Id.* at 828:20-829:02.

14, 23-24); (2) because other parties were prosecuted or pled means Deutsche Bank did not improperly influence Connolly's prosecution (*id*.); and (3) "presumably" the grand jury testimony of FBI Agent Weeks was based on his interview with Connolly. *Id.* at 16.

Deutsche Bank also asks this Court to change the law in its favor. At least three of the main legal arguments on which Deutsche Bank relies depart materially from prevailing case law. *First*, Deutsche Bank argues for the application of a Rule 9(b) pleading standard without citation to case law and despite every other case cited in its motion applying the Rule 8 standard. *Second*, Deutsche Bank argues for a test on the first element of the malicious prosecution claim that runs counter to the majority of precedent in New York. *Third*, Deutsche Bank argues for a definition of malice that has been rejected by New York courts. In addition, Deutsche Bank tries to wish into non-existence Judge Marrero's recent decision denying Citibank's motion to dismiss a similar malicious prosecution claim in *Ramchandani v. Citigroup, Inc.*, No. 19-CV-9124 (VM), 2021 WL 930627 (S.D.N.Y. Mar. 11. 2021), burying any discussion of that case to two lines on page 24 of its brief.

A court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). Applying that standard, Defendant's motion fails. Connolly sufficiently pleads a claim that meets the relevant standard and is facially plausible. *See Jain v. City of New York*, No. 20-CV-5442 (JMF), 2021 WL 6064204, at *2 (S.D.N.Y. Dec. 22, 2021) (A complaint will survive a motion to dismiss "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 556 (2007)). Because Defendant's motion requires deciding disputed facts and significant departures from the prevailing law, it should be denied.

## ARGUMENT

### I.      Legal Standard for a Motion to Dismiss

In evaluating a motion to dismiss a complaint pursuant to Rule 12(b)(6), a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in plaintiff's favor. *See Jain,* 2021 WL 6064204, at *2 (citing *Burch v. Pioneer Credit Recovery, Inc*., 551 F.3d 122, 124 (2d Cir. 2008) (*per curiam*)). A claim will survive a Rule 12(b)(6) motion if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. at 570). The facial "plausibility standard is not akin to a 'probability requirement." *Twombly*, 550 U.S. at 556. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Jain,* 2021 WL 6064204, at *2 (citing *Iqbal*, 556 U.S. at 678).

### A.      The Rule 9(b) Standard is Inapplicable

Despite Defendant's unsupported assertion (Mot. to Dismiss at 8, 15, 19), Rule 9(b) is inapplicable here. Defendant cites no case law supporting its argument for the use of the heightened pleading standard and its other cited cases rely on the Rule 8 standard articulated in *Twombly* and *Iqbal* and by this Court in *Jain*. Throughout its motion, Defendant improperly attacks the Amended Complaint by applying Rule 9(b). Those arguments should be analyzed under the proper Rule 8 standard, for example:

- Deutsche Bank argues that Connolly's allegations fail because he did not make a specific allegation about being named in the White Paper presented by Deutsche Bank to the government. Mot. to Dismiss at 11, 24. However, Connolly cannot make such an allegation because he does not have the White Paper. That is the purpose of discovery. The portions

4

of the White Paper cited in the Amended Complaint are excerpts quoted in motions and rulings filed in *United States v. Connolly*, No. 16-CR-0370 (S.D.N.Y.). Without discovery, Connolly cannot review the White Paper, does not know if the White Paper named him (either by name or position), whether there was more than one White Paper, and/or if there were supplements, answers to which Deutsche Bank seeks to escape.

- Deutsche Bank argues that Connolly should have alleged with greater specificity how the factually inaccurate information the Bank provided relating to Connolly's compensation and financial motives impacted the charging decisions. Mot. to Dismiss at 12. This is not the standard under *Twombly* and *Iqbal*. FBI Agent Weeks testified to the grand jury about Connolly's supposed financial motive. Am. Compl. ¶¶ 82-84. It is well more than plausible that when pursuing charges against Connolly and indicting him, the prosecutors and the grand jury were influenced by the false information Deutsche Bank provided about Connolly having a motive he did not in fact have. That this information was significant to the government's decision is bolstered by the fact it was highlighted in the government's opening statement at trial. *Id.* ¶ 91.

- Deutsche Bank explicitly states that allegations relating to defects in the grand jury proceeding must be analyzed under Rule 9(b) (Mot. to Dismiss at 15) and argues that "presumably" Agent Weeks included as a basis for certain testimony an interview with Connolly. *Id.* at 16. The basis of Agent Weeks' testimony is at the heart of the disputed facts in this case, and a defendant moving to dismiss a complaint is not free to insist on its preferred presumptions, particularly when Agent Weeks testified that his "testimony was based on documents, communications, and information obtained from Deutsche Bank." Am. Compl. ¶ 87.

The Amended Complaint satisfies *Twombly* and *Iqbal*. Its factual allegations should be presumed as true and all reasonable inferences should be drawn in Connolly's favor (not Deutsche Bank's), and Defendant's arguments should be considered under the proper standard.[4]

## II.    The Amended Complaint States a Claim for Malicious Prosecution

To state a claim for malicious prosecution under New York law, a plaintiff must allege: "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000); *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010).

### A.    Deutsche Bank Initiated and Continued the Prosecution

Judge Marrero recently considered and rejected the standard that Defendant relies on for the first element of a malicious prosecution claim. *See Ramchandani v. Citigroup, Inc.*, No. 19-CV-9124 (VM), 2021 WL 930627, at *6 (S.D.N.Y. Mar. 11, 2021). In *Ramchandani,* the defendant argued that initiating a prosecution means a defendant must have "affirmatively induced the prosecution to the point of overtaking the prosecutor's volition." *Id.* The court rejected that argument and found that "liability will lie if defendant knew the information to be false, yet still gave it to a prosecutor." *Id.* (internal quotation omitted.) Judge Marrero noted that "New York courts have at various times used different tests for what constitutes the initiation of a criminal proceeding" and that the "better interpretation" is that "[f]urnishing false information to law enforcement authorities is sufficient to satisfy the first element of a malicious-prosecution claim when, at the time the information was furnished, the person providing it knew it to be false." *Id.*

---

[4] While there is no authority applying Rule 9(b) to a malicious prosecution claim and Rule 8 is the proper standard, the Amended Complaint alleges the claim with sufficient particularity to satisfy Rule 9(b).

The court in *Ramchandani* cited significant authority to support its ruling. *See Chimurenga v. City of New York*, 45 F.Supp. 2d 337, 343 (S.D.N.Y. 1999) (Rakoff, J.) ("Where a party is responsible for providing false information or manufactured evidence that influences a decision whether to prosecute, he may be held liable for malicious prosecution."); *Coscia v. El Jamal*, 156 A.D.3d 861, 863 (2d Dep't 2017) ("[I]n order for a civilian defendant to be considered to have initiated the criminal proceeding so as to support a cause of action based on malicious prosecution, it must be shown that the defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act."); *Maskantz v. Hayes*, 39 A.D.3d 211, 213 (1st Dep't 2007) ("[A] defendant may be said to have initiated a criminal proceeding by providing false evidence to the police or withholding evidence that might affect the determination by the police to make an arrest"); *Lupski v. County of Nassau*, 32 A.D.3d 997, 998 (2d Dep't 2006) ("[I]t must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.").

In *Williams v. CVS Pharm., Inc.*, 126 A.D.3d 890, 892 (2d Dep't 2015), another case citied by Judge Marrero, the court discussed the difference in the standards for false arrest as opposed to malicious prosecution. That court applied the standard relating to overcoming a prosecutor's volition to a claim of false arrest: "To be held liable for false arrest, the defendant must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal, to the point where the officer is not acting of his [or her] own volition." *Id.* (internal quotation marks omitted). On the other hand, with regard to malicious prosecution, that court stated: "in order for a civilian defendant to be considered to have initiated the criminal proceeding so as to support a cause of action based on malicious prosecution, it must be shown that defendant played an active role in the prosecution, such as

giving advice and encouragement or importuning the authorities to act." *Id.* (internal quotations omitted); *see also Williston v. Jack Resnick & Sons, Inc.,* 177 A.D.3d 822, 823 (2d Dep't 2019).

The vast majority of the case law supports the standard applied in *Ramchandani* and the other cases cited above. In *Place v. Ciccotelli*, 121 A.D.3d 1378, 1379-80 (3d Dep't 2014), the Appellate Division concluded that the Supreme Court erred in dismissing plaintiff's malicious prosecution cause of action because allegations that an individual knowingly provided false information or withheld information have been found to be sufficient to state that the defendant initiated the proceeding by playing an active role in the other party's arrest and prosecution. In *Emanuel v. Griffin*, No. 13-CV-1806 (JMF), 2013 WL 5477505, at *7 (S.D.N.Y. Oct. 2, 2013), this Court held: "An individual not in control of the prosecution may be held liable for malicious prosecution if he or she played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act. Under this formulation, the Second Department has held that one can be held liable for malicious prosecution by giving false information to authorities if at the time the information was provided, the defendant knew it to be false." (Internal citations omitted.) In *Bah v. Apple Inc*., No. 19-CV-3539 (PKC), 2020 WL 614932, at *13 (S.D.N.Y. Feb. 10, 2020), the court explained that "New York law has long equated the civil defendant's failure to make a full and complete statement of the facts to the District Attorney or the court, or holding back information that might have affected the results, with that defendant's initiation of a malicious prosecution."[5]

---

[5] In a short unpublished opinion, the Second Circuit uses the volition language. *Jessamy v. Jakasal*, No. 21-CV-214, 2022 WL 1669512, at *3 (2d Cir. May 26, 2022). But the authority *Jessamy* relies on, *Moorhouse v. Std., New York*, 124 A.D.3d 1 (1st Dep't 2014), applies the standard as articulated in *Ramchandani*, 2021 WL 930627, at *6 and *Ziming Shen v. City of New York*, 725 F. App'x 7,

The cases cited by Defendants are not inapposite. In *Baer v. Sprint Long Distance*, 60 F. Supp. 2d 209, 213 (S.D.N.Y. 1999), the court found: "It is well settled that one who discloses to a prosecutor ***all he knows*** concerning a potential criminal matter and ***does no more*** is not liable for commencing any ensuing prosecution." (Emphasis added.) The allegations here are that Deutsche Bank did not tell the prosecutors the whole story and did much more to drive the direction of a complex investigation.

In *Gilman v. Marsh & McLennan Companies, Inc*., 868 F. Supp. 2d 118, 128 (S.D.N.Y. 2012) (Oetken, J.), *aff'd*, 654 F. App'x 16 (2d Cir. 2016), the court found the pleading was conclusory and insufficient under *Twombly* and *Iqbal*. However, the court noted that "a person who does not file a complaint may be found to have initiated a proceeding for malicious prosecution purposes where that person induces or persuades a prosecutor to act. . . . [T]his usually arises in situations where the person has induced prosecution by providing false information to the authorities, knowingly withholding highly material information, or convincing a person to file a complaint who would not otherwise have done so." *Id.* This is exactly what Connolly's Amended Complaint alleges.

The authority cited in *Gilman* supports this conclusion. In the motion to dismiss phase of *Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc.*, No. 99-CV-4677, 2002 WL 737477, at *3 (S.D.N.Y. Apr. 25, 2002), the court denied the defendant's motion to dismiss, finding "[w]here a party is responsible for providing false information or manufactured evidence that influences a decision to prosecute, he may be held liable for malicious prosecution." *See also Delince v. City*

───────────────

14 (2d Cir. 2018). Moreover, the cases cited in *Moorhouse* do not apply the volition standard and in one, *Mesiti v. Wegman*, 307 A.D.2d 339 (2d Dep't 2003), the court distinguished the volition standard as applying to false arrest.

*of New York*, No. 10-CV-4323, 2011 WL 666347, at *5 (S.D.N.Y. Feb. 7, 2011) ("At the motion

to dismiss stage, New York law requires a plaintiff to 'plead [ ] intentional or knowing conduct on

the part of a defendant,' including misrepresentations, falsification or omission of evidence to the

grand jury or district attorney.") (brackets in original, citation omitted). Judge Oetken

distinguished his ruling in *Gilman* a year later in *United States v. Guzman*, No. 11-CV-5834, 2013

WL 543343, at * 6 (S.D.N.Y Feb. 14, 2013), where the complaint was sufficiently plead, and Judge

Oetken denied the motion to dismiss based on allegations that defendants made false statements

to prosecutors. Finally, *Dantas v. Citigroup, Inc*., 779 Fed. App'x 16 (2d Cir. 2019), turned on the

law enforcement authority of the Brazilian legislature and the court found that, in any event, the

claim fell within the scope of a prior settlement agreement and had been released.

The Amended Complaint alleges Deutsche Bank purposefully played an active role in the

prosecution, acted as an interpreter for documents and information and advised the prosecution on

its meaning and import with the knowledge and intent that the information would be used in

charging decisions. Am. Compl. ¶¶ 48-53, 64, 70, 100-101, 103. While playing this active role,

the Bank knowingly gave false information and withheld information from the government,

including misleading information about Connolly's financial motives (*id*. ¶¶ 10, 48) and failing to

inform the government that Connolly did not trade LIBOR-based instruments (*id*. ¶¶ 37, 82, 84,

91). In addition, the Bank misled or failed to truthfully inform the government of the role of senior

executives and Connolly's reliance on the Bank's approved practices (*id*. ¶¶ 11, 40, 42, 61-62);

the role of Connolly's boss who directed him to communicate with LIBOR submitters in

accordance with the Bank's policies (*id*. ¶¶ 39-40); the roles of Mr. Jain, Mr. Cloete, and Mr.

Nicholls in approving and directing communication about LIBOR and restructuring the floor plan

to facilitate such communication (*id*. ¶¶ 61-62); and the context and meaning of Connolly's email

exchanges. *Id*. ¶¶ 64, 70. The false and misleading information influenced the government, its understanding of the events and its charging decisions. *Id*. ¶¶ 70, 80-85, 87, 90-91.

      **B.**     **The Proceeding Terminated in Favor of Connolly**

      Although Deutsche Bank tries to make much of Connolly's initial conviction at trial, there is no dispute that the proceeding terminated in his favor. The Superseding Indictment charged Connolly with one count of conspiracy to commit wire fraud and bank fraud, and seven counts of wire fraud. Ex. B, the Superseding Indictment. The government dismissed two counts of wire fraud prior to jury charge (Ex. 2 to the Porter Declaration, Connolly Judgment in a Criminal Case; *see also* Ex. A, Trial Tr. 2395:5-24), which is a favorable termination under New York law. *Cantalino v. Danner*, 96 N.Y.2d 391 (2001). The trial jury acquitted Connolly of three counts of wire fraud (*id.*; *see also* Ex. A, Trial Tr. 2945:9-2948:11), which is also a favorable termination despite the conviction on other counts. *Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir. 1989) ("[A]n acquittal satisfies the favorable termination requirement even when there has been a conviction on a related charge, or one arising from the same incident or event."). The Second Circuit acquitted Connolly on the remaining charges (conspiracy and two counts of wire fraud). *United States v. Connolly*, 24 F.4th 821 (2d Cir. 2022).

      **C.**     **The Absence of Probable Cause**

      A party that knowingly misrepresents information to law enforcement cannot later claim on a motion to dismiss that its false information does not matter because it had probable cause to believe in another's guilt. A strong line of New York case law supports the view that lying, omitting information, or otherwise providing false or misleading information to law enforcement, as is the allegation at the heart of Connolly's complaint, defeats any defense of probable cause. As stated by the Second Circuit in *Ziming Shen v. City of New York*, 725 F. App'x 7, 14 (2d Cir. 2018):

In the context of a malicious prosecution claim under New York state law, a plaintiff can defeat a showing of probable cause "by evidence establishing that the police witnesses have not made a complete and full statement of facts . . . to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence[,] or otherwise acted in bad faith." *Torres v. Jones*, 47 N.E.3d 747, 762 (N.Y. 2016) . . . .

*       *       *

New York courts have long made clear that this exception to the finding of probable cause applies where a private citizen provides false information to law enforcement. *See, e.g.*, *Ramos v. City of N.Y.*, 285 A.D. 284, 300 (1st Dep't 2001) ("The record here, for the present motion, sufficiently supports plaintiff's claim, for purposes of denying defendant's motion, that witnesses had not made a complete and full statement of facts either to . . . the District Attorney, that they had misrepresented or falsified evidence, and that they sufficiently withheld evidence or otherwise acted in bad faith, which, if proved, would overcome the presumption of probable cause. At this stage of the proceeding, it cannot be found as a matter of law that defendant prosecuted plaintiff with probable cause and without malice.").

Under, *Ziming Shen,* 725 F. App'x at 14, and the authority it cites, this by itself defeats the argument for absence of probable cause at the motion to dismiss stage. However, even if this Court were to rule that a credible allegation of lying to law enforcement is not a complete exception to the need to show probable cause — it is impossible to reconcile the allegations made in the Amended Complaint that Deutsche Bank lied and manipulated the information it provided to law enforcement with a finding that Deutsche Bank had probable cause as a matter of law.

The probable cause defense requires establishing "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *See Werkheiser v. Cnty. of Broome*, No. 22-CV-73 (MAD/TWD), 2023 WL 1927696, at *8 (N.D.N.Y. Feb. 9, 2023). Here, it requires that Deutsche Bank's belief of Connolly's guilt be both objectively reasonable and genuinely held. *See Williams v. City of New York*, 508 F.2d 356, 359 (2d Cir. 1974) ("A defendant in an action for malicious prosecution cannot make out a case of probable cause, however suspicious the circumstances of plaintiff's guilt, if he knew or believed that plaintiff was not guilty. The existence of probable cause requires the honest and reasonable belief of the defendant who

had instituted the proceedings complained of, and if he actually had no belief in the plaintiff's guilt, he cannot establish probable cause."). To the extent Deutsche Bank lied, omitted or massaged the information it provided to law enforcement, it raises factual questions as to the objective foundation of Deutsche Bank's belief and whether it was genuinely held.

Deutsche Bank's main argument is that, at the time the prosecution was initiated, it was reasonable for it to believe that Connolly had committed a crime, in large part because Connolly's conduct was "widely considered at the time to be criminal" by "the U.S. government and the lower-court judge," "government agencies, prosecutors, banks, and similarly situated defendants alike." Mot. to Dismiss at 13-15. This presupposes that the government's charging decision was totally independent of and unaffected by the misleading information the Bank provided or its bad faith and misses the essential point of the Complaint — that Deutsche Bank, with far superior information than the government about its own role, the role of its senior management and of Connolly, deliberately mislead the government into believing Connolly was guilty of a crime.

Deutsche Bank cannot now use a false government belief it helped foster to provide a defense to its own conduct. *Ziming Shen* is again instructive. In that case, the Second Circuit upheld the dismissal of malicious prosecution claims against law enforcement officials but reversed the dismissal of those claims against the complaining witness who had provided information to law enforcement. The Second Circuit reasoned that the law enforcement officials had a reasonable belief based on the reports made to them by the complaining witness. However, to the extent the complaining witness lied (as was credibly alleged), the witness was not entitled to having a reasonable belief. *Ziming Shen*, 725 Fed. App'x 7 at 14 ("[A] genuine dispute of material fact exists regarding whether [the complaining witness] misrepresented his altercation with Shen to the arresting officers, and later at the precinct, and still later to the district attorney's office … These

13

facts place the veracity of [the witness's] account into substantial question, and prevent summary judgment as to whether there was probable cause for the malicious prosecution claim ….").

Moreover, the Amended Complaint raises specific factual allegations that call into question whether Deutsche Bank did or even could have had a reasonable belief of Connolly's guilt. Deutsche Bank knew Connolly was following the policies and practices that Deutsche Bank created, directed, and approved, which the Bank believed to be "vetted, legal, and in compliance with the law" and "was known to, and approved, authorized, and directed by, the most senior Deutsche Bank officers" including "Deutsche Bank's Global Chief Executive and Co-Chairman Anshu Jain, its Global Head of Rates Alan Cloete, and its Global Head of Finance David Nicholls" who went as far as to restructure the Bank's floor plan to facilitate the sharing of LIBOR risk positions. Am. Compl. ¶¶ 6, 11, 39, 40, 42, 61.

Deutsche Bank also knew or had good reason to believe its LIBOR policies complied with the BBA Instruction. Am. Compl. ¶¶ 30, 33, 40, 42, 62. As eventually found by the Second Circuit, the BBA Instruction did not ask for a single rate but allowed for a range. *See United States v. Connolly*, 24 F.4th 821, 837 (2d Cir. 2022). The Amended Complaint alleges specifically that Deutsche Bank knew the "BBA Instruction governing LIBOR at the time . . . did not prohibit a bank from communicating internally about or considering its own trading positions as a part of its submission," which "Deutsche Bank knew . . . and made it part of its LIBOR submission policies and practices." Am. Compl. ¶¶ 33, 42.[6] As such, it is reasonable to conclude that the Bank believed, at the time, that its policies complied with the law.

---

[6] The Amended Complaint further alleges that when the Wall Street Journal questioned LIBOR's reliability, the BBA published a 2008 consultative paper in which it chose to leave LIBOR's

14

Deutsche Bank also knew that Connolly had no role in developing the Bank's LIBOR policy (*id.* ¶ 15), and that mid-level traders, including Connolly, trusted that the Bank's policies complied with the law. *Id.* ¶¶ 40, 70. The Bank knew that Connolly's emails were sent at the instruction of his boss (*id.* ¶ 39) and were in accordance with the Bank's policies. *Id.* ¶¶ 40, 42, 62.

These allegations — that Deutsche Bank had policies in place, which Deutsche Bank had reason to believe complied with the BBA Instruction, and which were authorized by senior management, conveyed to and followed by Connolly — far more than plausibly create a factual issue that Deutsche Bank did not have an objectively reasonable or genuinely held belief that Connolly had criminal intent. It is at least equally plausible (and we submit far more plausible) that Deutsche Bank believed at the time that its policies conformed with the BBA Instruction (and no one had committed any crime) and/or that, in any event, Connolly followed the Bank's policies believing them to be appropriately vetted and authorized and in compliance with the law, and therefore, that Connolly, at a minimum, lacked any criminal intent.

Similarly, the allegations in the Amended Complaint that Deutsche Bank knowingly gave false information and withheld information from the government about Connolly's financial motive (Am. Compl. ¶ 37, 82, 84, 91), the role of senior executives in orchestrating Deutsche Bank's LIBOR trading policies (*id.* ¶¶ 39, 40, 42, 61-62, 64, 70), and Connolly's reliance on the

---

definition unchanged. Am. Compl. ¶¶ 43-44. In response, the Chicago Mercantile Exchange wrote in a letter to the BBA that: "[a] Contributor Panelist who can borrow 'in reasonable market size' at any one of a wide range of offered rates commits no falsehood if she bases her response to the daily Libor survey upon the lowest of these (or the highest, or any other arbitrary selection from among them)." (*Id.* ¶ 44.) This was all known to the Bank. *Id.* ¶¶ 30, 40. When exonerating Connolly, the Second Circuit confirmed that the BBA LIBOR Instruction permitted submissions within an acceptable range. *Id.* ¶ 36.

Bank's approved practices (*id.* ¶¶ 40, 42, 62, 70-71) cast serious doubt and raise a factual issue as to the Bank's genuine and reasonable belief in Connolly's guilt.

Against all of this, Deutsche Bank asks the Court to find, as a matter of law, that certain statements in Connolly's emails gave the Bank probable cause.  Mot. To Dismiss at 14.  In so doing, Deutsche Bank ignores the context of the emails: they were sent at the instruction of Connolly's boss (*id.* ¶¶ 39, 61, 70), to Connolly's understanding, the emails complied with Bank policies (*id.* ¶¶ 40, 42, 70, 106), and Connolly believed the Bank's policies to comply with the law. *Id.* ¶¶ 30, 33, 34, 40, 42, 70. The context of the emails — all of which would have been known to Deutsche Bank — is core to the reasonableness and genuineness of Deutsche Bank's belief and involve multiple factual determinations that must be construed in Connolly's favor on a motion to dismiss.

Finally, Defendant asks the Court to weigh the import of plea decisions made by others. Mot. To Dismiss at 14-15. Of course, an entity or individual's decision to plead guilty is usually based on many factors including avoiding the risk of trial, collateral effects for regulated entities, and financing. This is especially true for highly regulated entities, which literally cannot survive being indicted and which have strong incentives to enter into deferred prosecution or financial settlements with the government regardless of whether they truly believe they have committed any crimes.[7] Again, the extent to which these pleas affected Deutsche Bank's genuine and reasonable

---

[7] *See* Floyd Norris, *Enron's Many Strands: News Analysis; Execution Before Trial for Andersen*, N.Y. Times (Mar. 15, 2002) https://www.nytimes.com/2002/03/15/business/enron-s-many-strands-news-analysis-execution-before-trial-for-andersen.html; Kurt Eichenwald; *The Collapse of Drexel Burnham Lambert*, N.Y. Times (Feb. 14, 1990) https://www.nytimes.com/1990/02/14/business/collapse-drexel-burnham-lambert-drexel-symbol-wall-st-era-dismantling bankruptcy.html.

belief at the time, or are otherwise evidence that it had probable cause, involves questions of fact that cannot be determined without discovery.

### 1.   The Amended Complaint Rebuts the Presumption Created by the Indictment

Based on the case law cited above, the presumption created by the indictment is entirely rebutted at the motion to dismiss stage by the credible allegations that Deutsche Bank lied, misrepresented and omitted information to the government. *See* supra at 10-12. The presumption of probable cause created by an indictment will be overcome if the "defendant has not made a full and complete statement of the facts either to the grand jury or the [prosecutors], has misrepresented or falsified the evidence or else kept back evidence which would affect the result." *Michaels v. MVP Health Care, Inc*., 167 A.D.3d 1368, 1372 (3d Dep't 2018) (internal punctuation omitted); *see also Hicks v. Marchman*, 719 F. App'x 61, 64-65 (2d Cir. 2018) (plaintiff successfully rebutted the presumption "by alleging that officers provided fabricated evidence to prosecutors"); *Manganiello v. City of New York*, 612 F.3d 149, 162-63 (2d Cir. 2010) (presumption of probable cause overcome where the indictment was secured through bad faith, perjury or falsified evidence); *Jorgensen v. Cnty. of Suffolk*, 558 F. Supp. 3d 51, 63-64 (E.D.N.Y. 2021) (presumption overcome by allegations supporting inference that defendants lied to prosecutors); *Ramos v. City of New York*, 285 A.D.2d 284, 300 (1st Dep't 2001) (defendant's withholding of and failure to disclose exculpatory evidence and incomplete witness testimony before the grand jury and to the prosecutors would overcome the presumption of probable cause). Deutsche Bank's failure to provide complete and truthful information to prosecutors to present to the grand jury is exactly what the Amended Complaint alleges. Its bad faith and the misleading information Deutsche Bank provided to the prosecutors infected the grand jury proceeding just as it infected the investigation and, ultimately, the trial.

The Amended Complaint alleges, among other things, that Agent Weeks testified about the meaning of Connolly's emails beyond the plain language of those emails. Am. Compl. ¶¶ 64-70, 79. He testified that his understanding and the basis of that testimony came from Deutsche Bank. *Id.* ¶ 64. Agent Weeks testified that Connolly had a "profit or loss interest in the movement of LIBOR rates," which was false. *Id.* ¶¶ 82, 83. Agent Weeks' misunderstanding as to Connolly's personal financial motive also came from Deutsche Bank. *Id.* Agent Weeks did not tell the grand jury that Deutsche Bank senior executives directed, approved and implemented the Bank's LIBOR policies and that Connolly had no role in determining those policies. *Id.* ¶ 84. This omission was based on the information the Bank had provided overemphasizing Connolly's role and under-emphasizing the role of others. *Id.* ¶¶ 82-84. Agent Weeks acknowledged his "testimony was based on documents, communications, and information obtained from Deutsche Bank." *Id.* ¶ 87.

*Ramchandani*, where Judge Marrero found the presumption of probable cause was overcome, is again instructive. Similar to the Amended Complaint here, Ramchandani alleged that defendants, Citibank, N.A and its related entities, mischaracterized chatroom communications and told prosecutors he was criminally liable for price-fixing based on those misinterpretations of the communications. *See Ramchandani*, 2021 WL 930627, at *7. Judge Marrero also found that allegations of a defendant's bad faith can help rebut the presumption of probable cause. *See id*. at *8. Citibank was alleged to have an improper, self-serving motive of limiting liability to a single innocent wrongdoer in order to shield itself from larger consequence. *Id*. Similarly here, Deutsche Bank sought to protect its higher-level executives, the actual decision and policy makers, and to redirect liability onto Connolly, a mid-level former innocent employee. Am. Compl. ¶¶ 56-62, 104. Again, it is telling that Deutsche Bank's motion all but ignores *Ramchandani*.

18

Moreover, with respect to the allegation that Deutsche Bank caused the grand jury process to be tainted, the Bank argues — against the controlling law — that Rule 9(b)'s heightened pleading standard should apply rather than Rule 8. Mot. to Dismiss at 15. As discussed above, the Bank's arguments must be reexamined through Rule 8, which requires only that plaintiffs plead "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570; (*see* discussion above at 4-6).

In actuality, Defendant is asking the Court to step even further past the Rule 8 standard, to make four factual determinations and to effectively apply a summary judgment standard.

First, Defendant argues the allegation that Agent Weeks relied on Deutsche Bank's interpretations of Connolly's emails is insufficient to show taint in the grand jury because it is insufficiently specific and "presumably" Agent Weeks would have relied on his interview with Connolly for that testimony. Mot. to Dismiss at 16. As in *Ramchandani*, it is equally, if not far more plausible that Agent Weeks relied on information and interpretations provided by Deutsche Bank (Am. Compl. ¶¶ 64, 87), and a defendant on a motion to dismiss cannot ask the Court to presume disputed facts or inferences in its favor.

Second, Defendant asks the Court to decide that its omission of the fact that the BBA's LIBOR Instruction permitted Connolly's conduct could not have affected the grand jury because the BBA's policy was public. Mot. to Dismiss at 16-17. This ignores the important information (as discussed above) that Connolly alleges was withheld from the government, including information as to the role of senior Deutsche Bank management in interpreting and following those BBA rules, and in setting and disseminating policies based thereon, which policies were followed by Connolly, all of which would be relevant to a decision to indict and all of which should be the subject of discovery, not a motion to dismiss.

19

Third, the Court is asked to find that the presentation of false information about Connolly's financial motive could not have influenced the grand jury because motive is not an element of the crime. Mot. to Dismiss at 17, 20. This argument is belied by what actually transpired. The Amended Complaint alleges Deutsche Bank provided the government with false information about Connolly's financial motives (Am. Compl. ¶¶ 37, 82, 91) and there can be no dispute that the government relied heavily upon this false information both in its grand jury presentation (*id.* ¶¶ 82-84) and in its opening at trial (*id.* ¶ 91). In short, whatever hyper-technical argument Deutsche Bank may be making, the actual facts on the ground are that both Agent Weeks believed Connolly's motive mattered greatly in making his presentation to the grand jury and that the government's trial attorneys continued to so believe in presenting their opening. Deutsche Bank may, of course, make this argument — that motives, including its own, do not matter — at trial of this case.

Finally, the Court is asked to find that withholding information that the Bank's LIBOR policies were directed and approved by Deutsche Bank's senior executives, legal and compliance departments did not affect the grand jury. Mot. to Dismiss at 17-18. Factual determinations such as these are for trial.

### 2. The Amended Complaint Rebuts the Presumption Created by the Conviction

The presumption of probable cause created by a conviction that was later reversed (in Connolly's case, on the factual and legal merits) will be successfully rebutted by allegations that the "conviction was obtained by fraud, perjury, conspiracy, or other undue means (*e.g.,* the misrepresentation, falsification or withholding of material evidence)." *Whitmore v. City of New York*, 80 A.D.2d 638, 639 (2d Dep't 1981); *see also Ramos v. City of New York*, 285 A.D.2d at

300 (defendant's misconduct negated a finding of probable cause with respect to plaintiff's claim of malicious prosecution arising from a wrongful conviction).

The Amended Complaint alleges the misinformation intentionally provided by Deutsche Bank prior to trial continued to influence the prosecution, corrupting the presentation to the trial jury and the conviction, including, false evidence of Connolly's financial motive, position of authority, and responsibility for LIBOR submissions and the role of the Bank's senior executives. Am. Compl. ¶¶ 90, 91, 100-102.

Defendant repeats its argument that false information from Deutsche Bank about Connolly's personal financial motive, which was highlighted in opening statements, could not have possibly influenced the outcome at trial because a personal pecuniary motive is not an element of wire fraud. Mot. to Dismiss at 20-21. Similarly, Defendant asks the Court to decide that the prosecution's false narrative that the LIBOR submitters were subordinates of Connolly and he gave them directives had no impact at trial. *Id.* Both arguments require the Court to make factual conclusions.

The Amended Complaint also addresses the perjury and the attempt to submit manufactured documents at trial. While these allegations go primarily to the Deutsche Bank's malice, the Amended Complaint does allege that it influenced the trial and conviction. The alleged perjury and false documents went directly to significant issues in the trial and highlight deeper misconduct by Deutsche Bank. An important fact for the defense was that Connolly did not trade in products related to LIBOR. Ex. 18 to the Porter Declaration, Trial Tr. 93:16-22 ("Matt Connolly had very little to do with LIBOR. It really wasn't part of his job. He was a cash trader, like you heard about. He didn't trade in LIBOR derivatives. He supervised the desk. LIBOR was a foreign concept to Matt Connolly . . . .")  For use at trial, Deutsche Bank with a third-party consultant

creatively reconstructed data sets giving the false impression that Connolly requested high or low LIBOR for his benefit. Ex. A, Trial Tr. 346:1-347-2, 805:14-16, 807:6-808:15.  An employee of Deutsche Bank, Guy Weston-Edwards, testified that at the instruction of Deutsche Bank in-house attorney Jesse Crew and prosecutor Michael Koenig, he swore in two false affidavits that the manufactured data sets were true and correct business records. Am. Compl. ¶¶ 92-96; Ex. A, Trial Tr. 802:5-817:24.

Defendant argues that because the trial court excluded the evidence and informed the jury "presumably, she did not allow it to influence the outcome of the trial." Mot. to Dismiss at 19-20. However, Mr. Weston-Edwards was eventually allowed to testify on a subset of issues, including a "data research project" that he undertook during trial to identify the book to which certain trades were associated, how Deutsche Bank recorded trades, and the systems on which the data was maintained. Ex. A, Trial Tr. 2211:13-2222:20. In addition, after the third-party data sets were excluded, Deutsche Bank directed Mr. Weston-Edwards to work through the night to create new exhibits to be introduced as evidence that purported to show which trader booked certain trades based on Deutsche Bank data, but Mr. Weston-Edwards testified that the raw data was unreliable in this respect and it was excluded. *Id.* at 930:7-20, 931:12-17, 933:11-934:18, 999:9-13. The Bank knew its raw data was unreliable yet, again, attempted to have it proffered at trial. *Id.* at 843:10-844:6, 855:17-881:10. The creation of data sets, the attempted false presentations by Mr. Weston-Edwards, and the full extent of Deutsche Bank's involvement in this perfidy, and its ultimate impact on the trial are issues of fact suitable for discovery in a malicious prosecution case.

In any event, the presumption of probable cause would only apply to the three counts on which Connolly was convicted. *D'Angelo v. Kirschner*, 288 Fed. App'x 724, 726-27 (2d Cir. 2008) ("[A] finding of probable cause to arrest as to one charge does not necessarily defeat a claim of

malicious prosecution as to other criminal charges that were resolved in the plaintiff's favor."); *Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir. 1989) (plaintiff permitted to proceed with malicious prosecution claim on charge that jury acquitted despite being convicted on another). On motion by the government, two counts were dismissed (Ex. A, Trial Tr. 2395:5-24) and the jury found Connolly not guilty of another three counts. Ex. 2 to the Porter Declaration, Connolly Judgment in a Criminal Case. There is no conviction presumption of probable cause as to five of the eight indicted counts.

### D.      The Complaint Alleges Deutsche Bank Had Actual Malice

Defendant argues that instructing an employee to commit perjury and helping to manufacture and submit false documents into evidence is insufficient to allege malice. Like the proverbial ostrich, Deutsche Bank pretends that allegation does not go to its desire to see something other than justice served. It is hard to imagine a more malicious act than sending out an employee to commit perjury. While it is more than plausible that such conduct shows the desire to inflict injury and specific animosity, both in continuing the prosecution and by revealing Deutsche Bank's prior intent to harm Connolly, Deutsche Bank again argues for the incorrect legal standard for malice in a malicious prosecution claim. *See Smith-Hunter,* 95 N.Y.2d at 195 (malicious prosecution goes to the commencement or continuation of a prosecution). When applied to the correct legal standard, Deutsche Bank's arguments fall. Under New York law, on a motion to dismiss, malice is inferred if the plaintiff overcomes the presumption of probable cause. *See*, *e.g.*, *Kurtz v. Hansell*, No. 20-CV-3401 (PAE), 2021 WL 1143619, at *16, 22 (S.D.N.Y. Mar. 24, 2021) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997)). For the purpose of the motion to dismiss, the Court could end its inquiry there. As detailed in Section C above, the

Amended Complaint sufficiently alleges that Deutsche Bank did not have an honest or reasonable belief in Connolly's guilt, negating its probable cause defense.

In the context of malicious prosecution, malice does not mean "actual spite or hatred." *Ramchandani*, 2021 WL 930627, at * 9. Malice "exists where the malicious prosecution defendant commences a criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Bah*, 2020 WL 614932, at *14 (quotation marks and citation omitted). Malice can also be shown where a defendant gives the prosecution false or misleading information. As explained by the Second Circuit in *Ziming Shen,* 725 F. App'x at 15 (review of a summary judgment), "the plaintiff may show malice and overcome the presumption of probable cause with proof that the defendant falsified evidence in bad faith and that, without the falsified evidence, the authorities' suspicion of the plaintiff would not have fully ripened into probable cause."

In addition to the perjury and manufacturing of false evidence at trial, the Amended Complaint alleges that Deutsche Bank knew the information it provided to the government about Connolly was false and misleading, knew information it withheld was misleading, and did so in an effort to scapegoat Connolly, protect itself and its senior executives. Defendant again asks the Court to weigh the competing versions of fact and find that its settlement with the governments of the United States and the United Kingdom, the fine it paid and the adverse employment consequences for certain of its employees, means that Deutsche Bank could not have acted improperly with respect to Connolly. Weighing competing factual allegations is not the purpose of a motion to dismiss. For a motion to dismiss, allegations of providing false information to the prosecution must cast doubt on any defense of genuine belief of guilt. That alone is enough under the law, but when combined with allegations of an improper motive to protect more important

24

people and participating in serious misconduct at trial, the Amended Complaint sufficiently alleges

malice.

## **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss should be denied.

Dated: May 1, 2023
New York, New York

                                  /s/ David B. Wechsler
David Wechsler
Jonathan Harris
Julie Withers
Daniel Grossman
HARRIS ST. LAURENT & WECHSLER LLP
40 Wall Street, 53rd Floor
New York, NY 10005
T: (212) 397-3370
jon@hs-law.com
dwechsler@hs-law.com
jwithers@hs-law.com
dgrossman@hs-law.com

*Attorneys for Plaintiff Matthew Connolly*